**J. C. Amsler, Appellee, v. A. Bruner, J. S. Abbott, F. L. Dewey, G. B. West, D. E. Thoeman and the firm of F. C. Jack & Company, composed of F. C. Jack and D. A. Bartlett, Trading as Leighty Oil Company, Appellants.**

1. ASSUMPSIT—*pleading.* Where a person expressly contracting to do work sues on the common counts, but defendant sets up in his pleas the express contract, a failure to perform and resulting damages, and issue is joined thereon, any omission in the declaration is supplied.

2. ASSUMPSIT—*common counts.* A person who has contracted to drill a well for a specified amount, on proving performance of the contract and the reasonable value of the work, may recover under

the common counts an amount not exceeding that specified in the contract.

3. CONTRACTS—*when severable.* If the part of a contract to be performed by one party consists of several distinct and separate items, and the price to be paid by the other is apportioned to each item to be performed or is left to be implied by law, such a contract is in general severable, and the same rule holds where the price to be paid is clearly and distinctly apportioned to different parts of what is to be performed, though the latter in its nature is single and entire.

4. CONTRACTS—*when severable.* A contract to drill a well at a certain price per foot, to clean out the well when finished at a certain price per day, and to draw an outside casing free of charge, is severable.

5. CUSTOMS AND USAGES—*when may be proved.* In an action on a contract to drill an oil well, where it is contended that the work is not completed, and the water is not properly cased off, the contract not fixing the point at which a well is completed, and being silent as to the duties of a driller in shutting off water, evidence is admissible to prove a usage or custom as to what constitutes the completion of an oil well, and to prove a custom as to the duties of a driller in shutting off the water.

6. CUSTOMS AND USAGES—*when defective instruction is cured.* A defective instruction as to the establishment of a custom, may be cured by another instruction which defines what is necessary to constitute a custom in a locality and states when such custom enters into and forms a part of contract.

7. INSTRUCTIONS—*when defense need not be referred to.* A person contracting to drill a well, suing on the common counts, and trying his case upon a theory that he had completed his contract and was entitled to the value of the service, is entitled to an instruction on such theory and the instruction need not refer to the defense that there was an express contract.

Appeal from the Circuit Court of Crawford county; the Hon. WILLIAM H. GREEN, Judge, presiding. Heard in this court at the March term, 1912. Affirmed. Opinion filed October 7, 1912. *Certiorari* denied by Supreme Court (making opinion final).

S. J. GEE and PARKER & EAGLETON, for appellants.

FREDERICK G. VIGER, J. A. MACHATTON and DUANE GAINES, for appellee.

MR. JUSTICE MCBRIDE delivered the opinion of the court.

Appellee recovered a judgment against the appel-

lants for $4193.75 in the Court below, and it is sought by this appeal to reverse the judgment.

On May 15, 1909, appellants by A. Bruner, wrote the appellee a letter soliciting him to drill a well for the appellants on the Leighty farm in Lawrence County, Illinois, and in the letter said:

"So if you would like to try some of our work I can give you a well to drill on the Leighty farm right away. We could furnish the rig on that farm or you can furnish it yourself; just as you like. And we will pay the same as we are now paying Dan Boggs who is drilling for us by furnishing his own rig. The price where the contractor furnishes his own rig and machinery is $1.35 a foot less $175.00 for fuel and water; and ten and twenty cents a foot for pulling the outside casing and $15.00 for cleaning out after the first two days; and where we furnish the rig, tank, water and fuel the price is $1.25 a foot, with same regulations for cleaning out but the contractor pulls the outside casing free, so you can have it either way. if you wish to try it, which if you do please let me know as soon as possible."

To this the appellee, on May 7th, replied saying:

"Your letter received, in reply will say I am laying down my tools for the Ohio Oil Company at a better price than you offer. They pay $1.35 less $100.00 for fuel and no charge for water, 20 and 10 for pulling casing and $15.00 per day for cleaning out from day well is finished. However, as I have two strings adjoining your Gee farm I might take the matter up with you personally. Would like to know how you case your wells. If you wish to take this matter up will come over and see you."

On the 21st of May the appellants wrote appellee a letter advising him that they would not like to advance the price and that they had offered him all they would; and in this letter they said:

"We had some misunderstanding with one of our contractors whose contract was based entirely upon what the Ohio Oil Co., do with and pay their contractors, and consequently the matter was laid before the

Ohio officials in open discussion and the matter settled on what they said about it and consequently we know all about what the Ohio do and pay. And we think if you will observe closely you will find that our rules and prices agree with theirs to the letter; that is unless they have changed within the last month   *   *   * We case our well by putting in about 215 feet of 12½ inch casing, one thousand feet of 10 inch, 1190 feet of 8¼, 1380 feet of 6⅝ and then line with 5-3/16 to the sand, then drill the well in, put the shot in with loaded anchor and pull the liner to be shot then after the well is shot put the liner back into the well and commence cleaning out, and let the liner follow until is reaches its seat. By doing this there is no danger of getting stuck in cave nor of putting in unnecessary time, fighting cave, etc."

To this the appellee replied and said:

"I will drill your well, you furnishing rig, fuel, water and casing as per your agreement for $1.25 per foot. However, should we be unable to pull casing with lines and blocks who furnishes the jacks? This should be understood before hand. Yesterday the Ohio sent out word all wells over 1600 feet deep would be $1.50 per foot."

And on May 26th, appellants replied and stated that they would have their Mr. Curley to get the rig ready and advised appellee that he would not need jacks for drawing the casing, etc. This was all of the correspondence between the parties with reference to this work and they had no conversation. The appellee proceeded to drill the well 1723 feet down to what was known as the "Tracey Sand" and put the casing in, and at this point Mr. Curley, by direction of Mr. Bruner, directed appellee's driller to quit the drilling and then the appellants took the hole drilled and "shot the well." After the well had been shot the appellee spent one hundred thirty days in cleaning out the well. At the time that appellee was directed to quit drilling and the well was shot, there was water in the well and when the liner was replaced it was not seated firmly and the water still remained in the well, and it

was claimed by witnesses for appellants that the water had not been properly cased off but some of the witnesses for appellee testified that the water had been properly cased off and that the cause of the water remaining in the well was due to the acts of the appellant in shooting the well. A great deal of testimony was devoted to the question as to whether or not the well had been properly cased, and the custom and usage, as to the duties of a driller in casing off the water and as to the time when the drilling was completed entered largely into the controversy in this case.

The declaration in this case consisted of the common counts, to which appellants filed a plea of general issue and three special pleas, setting up in various forms the contents of the letters, the failure of appellee to properly sink the well, and damages resulting to the appellants by reason thereof. To these special pleas the appellee filed four replications averring performance of the contract set up in the pleas, that the water did not run into the well until long after it had been completed and accepted by defendants; that the well was drilled in a workmanlike manner, that the casing was properly set and the water shut off, and that the appellants had not expended a large amount of money in the completion of the well, and averring performance generally and specifically of the contracts as set up in the plea. To these replications several rejoinders were filed reaffirming the failure to complete the well and that damages did accrue to the appellants by reason of appellee's failure to keep his promise; and denying that the well was accepted by the appellants.

Upon the trial of the case the appellee introduced testimony showing the drilling of the well to the depth of 1723 feet, the cleaning out for 139 days, and fixing the reasonable value of the drilling at $1.25 per foot and of the cleaning out at $15.00 per day, and rested his case. The appellants then introduced the several letters, also evidence of the failure of appellee to complete his well, shut off the water and of the amount of

damage resulting by reason thereof. The appellee then introduced testimony tending to show that at the time the well was shot it had been accepted by the appellants, that the water had been properly shut off and that the well as drilled by appellee had been appropriated by appellants and deepened to another and better oil sand.

Appellants now insist that in as much as it appears from these letters that there was an express contract as to this work, that the appellee could not recover upon his declaration in this case, which contains only the common counts, and that the court would not be authorized to enter a judgment, and says, "The determination of this question is important in considering every phase of the case. It is important in determining the averments contained in the declaration; it is important in measuring the competency of the evidence introduced and it is important in considering the correctness of the instructions given to the jury."

Much of the argument of counsel for appellants has been devoted to a discussion of this question and we have given it very careful consideration. In arriving at a conclusion upon this matter it should be borne in mind that the object of pleading is to form an issue and give the opposite party notice of the claim made, or defense relied upon. While it is true that the declaration in this case contains only the common counts, it is also true that the defendant filed three special pleas setting up, as they claim, the express contract, the failure to perform and the damages resulting. To this the plaintiff filed a replication averring performance of the contract set up; that the water did not run into the well until long after it had been completed and accepted by the appellants, that the well was drilled in a workmanlike manner, that the casings were properly set and water shut off, and averring generally the performance of the contract set up. To this replication the several rejoinders were filed re-affirming the failure to complete, and the damages resulting, and denying the ac-

ceptance by the defendant. Even if the contract was not set up in the original declaration, it was presented by the pleas. Its performance and acceptance of the well were averred in the replication and traversed by the rejoinders. While the pleadings were irregular, the contract together with the breaches thereof were, when the pleadings are considered as a whole, fully presented. The issues were made up presenting clearly and concisely the matters in dispute between the parties. The evidence was introduced upon the several issues by both parties, and while it was irregular we think that the jury was fully advised upon the proper issues and that the case was properly tried. In the case of Wallace v. Curtiss, 36 Ill. 156, the plaintiff had failed to set forth in his declaration the necessary averments to entitle him to recover, and upon this question being made the Supreme Court said, "There is no such allegation found in the declaration, but it is made the ground of defense in the special pleas that no inspector was chosen, as provided for in the contract, so that the defendants themselves put in issue that which was omitted in the declaration. The defendants tendered that issue, and the plaintiff had a right to accept it, and go to trial on it. He might have demurred to the pleas as being no answer to the declaration, but he chose to take the issue as tendered. The pleas cured the omission. 1st Chitty on Pleading, 673; Elliott v. Stuart, 15 Maine, 160; Slack v. Lyon et al., 9 Pick. 62. The issues were not alone on the facts stated in the declaration, but upon the agreement stated in the special pleas, and they may be taken as amendatory of the declaration, of the issue and verdict, in order to favor the justice of the case. 3 Bevard (S. C.) 362. Colcock, J., said in this case, 'It is unnecessary to go into the general question, because the defendant, by his pleading, supplied the deficiency of the plaintiff's declaration, and by the plea the agreement is specially set forth and made the subject of the issue referred to the

jury.'" This doctrine is re-affirmed, and the above quotation made in the case of Rubens v. Hill, 213 Ill. 537. We are of the opinion that appellants by setting up the express contract in the pleas and issue being joined thereon, supplied any omission that may have been wanting in the declaration.

We think, however, that under the holdings of our Courts, and under the claim and evidence offered by appellee that he had completed his contract and was seeking to recover the value thereof, not exceeding that specified in the contract, that could be recovered under the common counts. It is said in the case of Spencer v. Dougherty, 23 Ill. App. 399, "It was next urged that no recovery can be had upon the common *indebitatus assumpsit* counts, as there existed a special contract between the parties, and appellee should therefore have declared specially. It is well settled that when a special contract has been substantially performed by the plaintiff and nothing remains to be done but the payment of the money, a recovery may be had under the common counts." Citing Lane v. Adams, 19 Ill. 167; Childs v. Fischer, 52 Ill. 205; Taylor v. Renn, 79 Ill. 181. In the same opinion the Court further says, "And the same principle is held to apply when the work has been accepted and appropriated by the defendant, although it was not done within the time and in the exact manner provided for in the contract, leaving the defendant to recoup any damages he may have sustained by a failure by the plaintiff to perform the contract according to its precise terms." And citing Holmes v. Stummel, 24 Ill. 370; and many other cases. We think this doctrine is fully sustained by the case of Foster v. McKeown, 192 Ill. 339.

It is also claimed by appellants that this was an entire contract and could not be apportioned. They seem to be of the idea that this contract was sought to be enforced in fragments. The evidence of appellee discloses that he had performed the contract in its entirety, except to draw the outside casing, which was to be

done free of charge; but it no where appears in this evidence that any specific request was made upon appellee to draw the outside casing, but on the contrary it appears that it was retained and the well drilled to a deeper oil sand; but waiving this, it appears to us that this contract was clearly severable, as by its terms the part of drilling the well was to be paid for at $1.25 per foot, the cleaning of the well at fifteen dollars per day, and the drawing of the outside casing to be done free of charge. If a part to be performed by one party consists of several distinct and separate items, as in this case, and the prices to be paid by the other is apportioned to each item to be performed, or is left to be implied by law, such a contract will generally be held to be severable; and the same rule holds where the price to be paid is clearly and distinctly apportioned to different parts of what is to be performed, although the latter is in its nature single and entire. Siegel, Cooper & Co. v. Eaton & Prince Co., 165 Ill. 558. Keeler v. Clifford, 165 Ill. 544.

Complaint is also made that the Court erred in permitting the appellee to prove that a usage or custom existed as to what constitutes the completion or ending of the drilling of an oil well. The letters offered in evidence in this case do not fix the point at which a well is completed and ready to be shot, and it seems that a custom did exist in oil fields as to when the proper time was to stop the drilling. The appellants also offered in evidence the custom as to the duties of a driller in shutting off the water. The letters offered were also silent upon this question and we are unable to say that any error was committed by the court in allowing the witnesses to testify as to the usage or custom upon these matters, or either of them.

Objection is made to the giving of appellee's first instruction upon the ground there was no evidence in the record showing or tending to show that Curley had authority to pass upon or accept the work in drilling the well. Curley testified that Bruner had directed

him to stop the drilling as soon as they were through the sand, and that he did so under Bruner's direction. Curley and another witness testified that after the well was drilled to the depth claimed he told them to stop drilling, and that he, on behalf of Bruner took the well and shot it, and that Bruner had directed him to do this; those were matters to be considered by the jury in determining whether or not Curley was the agent of the defendant, and his authority. His authority did not depend alone upon the oral statements but upon his acts and conduct in connection with this matter; at least there was enough in it to warrant the instruction given.

We think the criticism upon the second instruction was without merit, as there is evidence tending to show that the cleaning was done under the direction of the defendants, and they were entitled to an instruction upon this theory.

The criticism upon the third instruction is not well taken as the evidence admitted by the court tended to show what was necessary to complete a well; and the further criticism, that there was no instruction given telling the jury how a custom is established if defective, is cured by appellants' fourth instruction which defines what is necessary to constitute a custom in a locality, and when such custom enters into and forms a part of the contract.

Instruction No. 7 is also criticised because it takes from the jury the defense insisted upon, that there was an express contract. The appellee offered testimony and tried his case upon the theory that he had completed his contract, and was therefore entitled to the value of the service, and it certainly would be true that if he had completed his contract, and the appellants had appropriated the benefits to their own use, that they would be liable for the reasonable worth of the services, and appellee was entitled to an instruction upon this theory. It was not necessary to incorporate appellants' defense in this instruction, and we

think this doctrine is approved in the case of Mt. Olive Coal Company v. Rademacher, 190 Ill. 538. But appellants' rights were fully protected herein by their instruction No. 5, 20 and 21, which advised the jury fully that if he had failed to complete the contract that he could not recover, or that even if completed he was entitled to damages if not performed according to the terms of the contract.

Instruction No. 9 is criticised because it entirely ignores any misrepresentation made by Kapral to Bruner at the time of the alleged acceptance. Even if this were true it is entirely cured by appellants' second instruction which advised the jury that if appellants were led to accept the work by statements that were untrue, then the appellants would not be bound by such acceptance.

We think the criticisms made upon the several instructions are without merit.

Upon the trial of this case the appellants contended that the appellee in drilling the well had not properly placed the casing so as to shut out the water, and that after the well was shot the liner failed to reach a proper seat and that the oil still remained in the water and that this was not a completion of the work according to the terms of the contract and the usages existing in that oil field. Upon the other hand, it was claimed by the appellee, and the testimony of his witnesses tended to show, that he had properly drilled the well; that while there was some water, that was known to appellants, and knowing that they received the well and shot it; that the liner was replaced, reached a proper seat and shut out the water for many days and that the fault of the casing and liner not having a proper seat was due to the negligence of the defendants and to the shooting of the well, and that the work of appellee was appropriated; that he had completed his work in substantial compliance with his contract. It is not necessary or proper for us to determine which version of this evidence is the correct one. These

were questions of fact to be determined by the jury, and unless we can say that the verdict of the jury is manifestly against the weight of the evidence then we have no right to disturb their verdict upon that ground, and we cannot say that the verdict rendered is in violation of this rule, and finding no substantial error in the record the judgment is affirmed.

*Judgment affirmed.*