Sanford J. Keeshin, Plaintiff-Appellee, *v.* William Levin, Defendant-Appellant.

(No. 58608;

First District (1st Division)—June 30, 1975.

*Opinion modified upon denial of rehearing September 22, 1975.*

Ronald S. Cope, of Ancel, Glink, Diamond & Murphy, P. C., of Chicago, for appellant.

Maurice J. McCarthy, of Chicago (Ettelson, O'Hagan, Ehrlich & Frankel, of counsel), for appellee.

Mr. JUSTICE HALLETT delivered the opinion of the court:

Plaintiff Keeshin and defendant Levin formed a corporation named Levin-Kreeshin, Inc., in which each owned 50 percent of the stock. Some 9 months later they entered into a written agreement for the sale of Keeshin's shares to Levin. Some 8 months thereafter, after the stock had been transferred, Keeshin filed an action in the chancery division of the circuit court of Cook County against Levin. In October of 1971, a partial summary judgment for Keeshin against Levin for $5,700 was entered (and paid) and in September, 1972, a final judgment for Keeshin against Levin for $52,550 was entered. The appeal now before us is from that judgment.

The defendant Levin contends: (1) that the promises in the contract are not severable and that the trial court therefore erred in allowing a rescission of only paragraph 8 of the contract; (2) that fraud or misrepresentation by the defendant was not established by clear and convincing evidence; (3) that the plaintiff did not prove that he relied upon any representation made by the defendant; and (4) that Levin-Keeshin, Inc., was a necessary party to the action. We conclude otherwise and affirm.

In January of 1969, the plaintiff and defendant formed a corporation, Levin-Keeshin, Inc., for the purpose of conducting a real estate business. Each party owner shares amounting to 50 percent of the outstand-

ing stock of the corporation. It was purely a two-person corporation. Defendant Levin was the licensed real estate broker, and plaintiff Keeshin worked as a salesman under defendant's license.

A dispute arose shortly after formation of the corporation. It had to do with the division of a commission arising from the sale of certain real estate located in Oklahoma. Apparently, the defendant had laid the groundwork for the sale before formation of the corporation and had consummated the sale after formation. He felt he was entitled to the entire commission. Plaintiff disagreed and argued that the commission was a corporate profit. Defendant finally paid plaintiff $7,700. The parties now dispute whether this was payment of plaintiff's share of the commission or a loan. However, the back of the check contained the following rather interesting endorsement signed by the defendant which tends to support the plaintiff's version that it was a share of the commission,

"Commission on Tanglewood and Monterey Apartments, Oklahoma City, Oklahoma."

At any rate, to use the plaintiff's words, their relationship from that point on began to "go downhill."

The parties ultimately decided to end their business relationship. They consulted their respective attorneys and negotiations were initiated which resulted in an agreement by which defendant agreed to buy out the plaintiff's shares and interests in the corporation. In defendant's words, they generally decided that "whatever profits or whatever corporate assets there would be would be split down the middle. Any commissions there were would be split down the middle. Basically that's it, and, we would go our separate ways." The agreement contained 11 paragraphs dealing with (1) defendant's purchase of plaintiff's shares of stock; (2) splitting of the corporate bank accounts; (3) plaintiff's removal of the furniture and drapes in his office and compensation to defendant for them; (4) vacation of the premises by plaintiff; (5) renaming of the corporation; (6) division of real estate listings by formula; (7) division of commissions by formula except for the commission on the sale of real estate at 1000 Lake Shore Drive; (8) division of the commission on the Lake Shore Drive property; (9) arrangements for the closing and transfer of cash and other assets; (10) arrangements for future deliveries to the corporation; and (11) the effective date of the agreement, August 1, 1969.

All portions of the contract have been fully executed with the exception of paragraph 8 which is the subject of the dispute between the parties. It concerns disposition of the commission from the sale of real estate located at 1000 Lake Shore Drive. Sale of this property was negotiated by the defendant. Paragraph 8 provides as follows:

"The parties acknowledge that the commission payable in connection with the pending sale of 1000 Lake Shore Drive, Chicago, Illinois, is to be treated differently from the foregoing commissions and is to be treated as follows:

(a) The total commission payable is to be paid to LEVIN.

(b) When and as received, LEVIN will pay to KEESHIN the following amounts:

(i) Of the first Fifty Thousand ($50,000) Dollars received, which is expected to be received prior to the end of 1969, LEVIN will pay KEESHIN Twenty-Five Thousand ($25,000) Dollars.

(ii) Of the second Fifty Thousand ($50,000) Dollars received, which is expected to be received thirty (30) days after the first payment, LEVIN will pay KEESHIN Twenty-Five Thousand ($25,000) Dollars.

(iii) The balance of the commission payable at the rate of Twenty-Five Thousand ($25,000) Dollars per year for four (4) years between 1971 and 1975 shall belong solely to LEVIN and KEESHIN shall make no claim for payment of any part thereof."

Shortly after the agreement was signed, defendant notified the plaintiff that the buyers of 1000 Lake Shore Drive, a partnership named Parallel VI, were having trouble obtaining the necessary financing and that, therefore, the deal was in jeopardy. Defendant then proceeded to shore up the deal: he contacted a broker in New York who agreed to back Parallel VI at a cost of $40,000 to defendant. Defendant then drew up a supplemental agreement modifying paragraph 8 which reduced plaintiff's and defendant's shares of the first $100,000 of the commission to $30,000 per person. In other words, the $100,000 was reduced to $60,000 by the New York broker's fees and the $60,000 was then split 50-50 by plaintiff and defendant. Plaintiff was then entitled to receive his share of the commission in two $25,000 payments as per paragraph 8.

The first payment was made as agreed. But, the second payment was for only $5,700. It was accompanied by a note stating that the $5,700 was the net amount due to plaintiff because plaintiff had owed some $9,300 to defendant by virtue of previous loans made to plaintiff, one of which, allegedly was the previously mentioned $7,700 check to plaintiff by defendant which plaintiff claimed was due him as his rightful share of a corporate commission earned on the sale of property in Oklahoma. Defendant maintained that the balance of the $9,300 allegedly owed to him was to reimburse him for payments he made to one Martin Baskin in order to pay off plaintiff's debt to Baskin. However, at trial, Baskin denied that he had ever loaned money to plaintiff or received money from defendant in payment of any such loan.

At any rate, plaintiff returned the $5,700 check accompanied by a note denying that he owed defendant $9,300. He also did some investigating. Plaintiff then brought suit against defendant in the chancery division of the circuit court seeking rescission of paragraph 8 of the agreement on grounds of fraud and misrepresentation alleging that defendant had originally told him that the total commission on the sale of the Lake Shore Drive property would be $200,000 but that half of it was promised to third parties and that he had agreed to accept only half of the first $100,000 (later reduced to $60,000) and make no claim on the remaining $100,000 as per paragraph 8 because he was led by the defendant's representations to believe (contrary to the fact) that defendant was actually obligated to third parties in that amount. Plaintiff also asked that the court order the defendant to account for all dealings and transactions relating to 1000 Lake Shore Drive, and that the court direct the defendant to pay plaintiff 50 percent of the second $100,000.

The court in 1971, entered partial summary judgment as follows:

"THIS MATTER coming on to be heard on the Plaintiff's Motion for partial Summary Judgment (denial of said Motion on 9/25/70 having been vacated and the Motion reinstated by Order of 10/26/70) and the Court having considered the pleading, and having heard arguments of Counsel, and having considered the Memoranda filed by the parties, and being fully advised—the Court finds:

1. That Paragraph 8 of Plaintiff's Exhibit 'A' of the Complaint is severable and subject to divided and separate consideration.

2. That the obligation under said Paragraph 8 of Exhibit 'A' is a personal obligation of the Defendant to the Plaintiff.

3. That Paragraph 6 of the Defendant's Answer admits a personal tender, and alleges a personal set off.

4. That the issues of fraud and misrepresentation, and set off, can be separately tried without prejudice to the admission of indebtedness evidenced by tender.

5. That the Plaintiff is entitled to partial Summary Judgment against the Defendant in the sum of $5,700.

WHEREFORE, IT IS ORDERED: That the Plaintiff have judgment against the Defendant in the sum of $5,700.

IT IS FURTHER ORDERED: That the issues of fraud and misrepresentation, and of set off, be held for trial or appropriate motions, in due course."

This judgment did not include the "no just cause" wording required by Supreme Court Rule 304(a) to make it a final appealable order.

Approximately 1 year later, a trial was held on the issues of fraud and misrepresentation and the court entered the following final judgment:

"THE COURT having heard and considered all the evidence submitted by the parties, having considered the exhibits admitted into evidence, having heard and considered the arguments of counsel, and having observed the witnesses, and being fully advised—The Court finds:

1. That Defendant made intentional misrepresentation of fact to the Plaintiff, as specified in the Complaint;

2. That Plaintiff was misled by Defendant's misrepresentations and Plaintiff relied upon those misrepresentations to his detriment;

3. That Paragraph 8 of the Agreement the parties dated September 30, 1969, is the result of the intentional fraudulent misrepresentations of the Defendant;

4. That the Plaintiff is entitled to fifty (50%) percent of the commission received for the sale of the premises in question;

5. That the Defendant did not loan money to the Plaintiff, and Defendant's claim for a set off of $9,300 is disallowed.

WHEREFORE, IT IS ORDERED: That Paragraph 8 of the Agreement of September 30, 1969, is null and void and of no legal effect.

IT IS FURTHER ORDERED: That the Plaintiff have Judgment against the Defendant in the sum of $52,550, with execution to issue.

IT IS FURTHER ORDERED: That the Plaintiff have Judgment against the Defendant for the costs of this suit."

This appeal followed.

We shall first deal with the defendant's contention that fraud or misrepresentation by him was not established by clear and convincing evidence.

■■ Defendant's testimony at trial was riddled with inconsistencies. He specifically denied ever representing that the commission would be $200,-000 in his answer to plaintiff's complaint. He stated, instead, that he had only represented that the commission, if paid, would amount to $100,000 and that this was reduced later to $60,000. However, paragraph 8 of the agreement clearly states that defendant would receive $200,000 commission. When called as a witness for plaintiff under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 60), defendant contradicted his written answer when he admitted having previously told plaintiff that the total commission was $200,000. He later testified denying ever having represented to plaintiff that there were any commitments against the commission (excluding the fee to the New York broker). But, his testimony

was impeached by virtue of a previous answer given by him to the same question in a deposition where he had stated that a portion of the total commission was committed in the form of a "kickback" to Parallel VI, the buyer of 1000 Lake Shore Drive. Thus, defendant was caught telling different stories in court; first, that the commission was not $200,000 and that there was no "kickback," and second, that the commission was $200,000 with and then without a "kickback."

Defendant's attorney at the time of the agreement also testified and he succeeded only in laying groundwork to destroy further defendant's already eroded credibility. He stated that although he could not recall specifics of the agreement, he did recall that defendant had told him that half of the commission was to be paid to the principals of Parallel VI and that this could not be made known in the contract since it would publicize a violation of the principal's ethical obligations. One of the principals was then called to testify and he stated that he neither received nor expected to receive any "kickback" from the commission. He testified that to the best of his knowledge the other principal of Parallel VI (there were only two) also had not received nor expected to receive a "kickback." On the basis of all this testimony, the trial court concluded, and we think reasonably, that there was no "kickback" to Parallel VI, that the total commission was $200,000 minus the fee to the New York broker, that defendant misled plaintiff into believing that because of the "kickback" the net commission was $60,000 rather than the $160,000 that it actually was, and that plaintiff was thereby misled into agreeing to the terms of paragraph 8.

We therefore conclude that fraud or misrepresentation by the defendant was established by clear and convincing evidence and that the trial court's finding "that the defendant made intentional misrepresentations of fact to the plaintiff as specified in the complaint," is adequately supported by the evidence.

We next pass to the defendant's contention that the plaintiff did not prove that he relied upon any representations made by the defendant.

What the defendant really contends here is the plaintiff Keeshin should have suspected that his own partner was a crook and therefore should have investigated and caught him in his lies.

This argument is inconsistent with defendant's denial that he made such misrepresentations. In any event, the rule is that where there is an absence of circumstances putting a reasonable man on inquiry, that person is justified in relying upon the representation without engaging in further inquiry (*Citizens Savings & Loan Association v. Fischer* (1966), 67 Ill.App.2d 315, 324, 214 N.E.2d 612), particularly where the misrep-

resentations concern matters which may be assumed to be within the knowledge of the party making them (*Pustelniak v. Vilimas* (1933), 352 Ill. 270, 276, 185 N.E. 611; *Bergman & Lefkow Insurance Agency v. Flash Cab Co.* (1969), 110 Ill.App.2d 415, 430, 249 N.E.2d 729). Here, the plaintiff had no involvement in the negotiations or sale of the Lake Shore Drive property. Therefore, he had no information to which he was a party by which he could have been led to suspect fraud. He was therefore entitled to and did rely on the defendant's representations.

We therefore conclude that the plaintiff proved that he relied upon the defendant's false representations concerning the $100,000 "kickback" and that the trial court's findings that:

"2. The plaintiff was misled by defendant's misrepresentations and plaintiff relied upon those misrepresentations to his detriment;
3. That paragraph 8 of the Agreement between the parties dated September 30, 1969, is the result of the intentional fraudulent misrepresentations of the defendant,"

are adequately supported by the evidence.

We next pass to the defendant's contention that the promises in the contract are not severable and that the trial court therefore erred in allowing a rescission of only paragraph 8.

Before dealing with this contention, we must first dispose of the plaintiff's argument that this contention is not now available to the defendant because he did not appeal from the 1971 partial summary judgment which, *inter alia*, found "that paragraph 8 of plaintiff's Exhibit 'A' of the complaint is severable and subject to divided and separate consideration." ■■ The obvious flaw in this argument is that it ignores Supreme Court Rule 304(a) (Ill. Rev. Stat. 1971, ch. 110A, par. 304(a)), which, in pertinent part, provides as follows:

"**Rule 304. Appeals from Final Judgments That Do Not Dispose of an Entire Proceeding.**

(a) **Judgments as to Fewer Than All Parties or Claims-Necessity for Special Finding.** If multiple * * * claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the * * * claims only if the trial court has made an express written finding that there is no just reason for delaying enforcement or appeal. * * * In the absence of such a finding, any judgment that adjudicates fewer than all the claims * * * is not * * * appealable and is subject to revision at any time before the entry of a judgment adjudicating all the claims * * *."

The 1971 partial summary judgment did not dispose of all of the claims

and it did not contain such an express finding. It was not therefore appealable and defendant's present contention with respect to severability is not barred by his failure to appeal earlier. In effect, the earlier findings became parts of the 1972 final judgment from which the defendant has appealed. See *Peesel v. Peesel* (1973), 11 Ill.App.3d 76, 296 N.E.2d 69; *Reed v. City of Belleville* (1973), 13 Ill.App.3d 1093, 301 N.E.2d 838.

We therefore now consider the defendant's contention that the promises of the agreement were not severable and that therefore the court erred in allowing a rescission of only paragraph 8 of the agreement.

■■ Whether a given contract is or is not severable cannot be determined by any precise rule; each case must depend in large part upon the specific terms of the contract involved.

In 17 Am. Jur. 2d *Contracts* §§ 325, 327 (1964), it is said, in pertinent parts:

"§ 325. **Factors and tests for determining character of contract.** No formula has been devised which furnishes a test for determining in all cases what contracts are severable and what are entire. The primary criterion for determining the question is the intention of the parties as determined by a fair construction of the terms and provisions of the contract itself, by the subject matter to which it has reference, and by the circumstances of the particular transaction giving rise to the question. Whether a contract is entire or divisible cannot be determined by a single term, phrase, or sentence, even though it is broad enough to include such meaning, unless, throughout the whole agreement and from the surrounding circumstances, it definitely appears either that it was or that it was not the intention of the parties that the contract should be entire and indivisible. If, in this respect, the parties themselves have placed a certain construction on the contract, that is to be considered, and acts of the parties in treating the contract as entire or severable have an important bearing on its construction. A factor in determining whether a contract is entire or severable is whether the parties reached an agreement regarding the various items as a whole or whether the agreement was reached by regarding each item as a unit. A contract to do several things at several times is divisible in its nature if there is no manifestation of a contrary intent. * * *

* * *

§ 327. **Contract embracing a number of distinct subjects.** An agreement which embraces a number of distinct subjects that admit of being separately executed and closed is, as a general rule, to be taken distributively or severally as to each subject. A contract

is severable where the part to be performed by one party consists of several distinct and separate items and the price to be paid by the other is apportioned to each item or is left to be implied by law. But this method of determining whether a contract is entire or severable will not override the clear intention of the parties, if such intention can be gathered from the whole subject matter of the contract. While the severable nature of the subject may often assist in determining the intention, it will not overcome the intent to make an entire contract when that is shown. Ultimately, the entirety of a contract depends upon the intention of the parties, and not upon the divisibility of the subject or the number of distinct subjects."

These views are reflected in the Illinois cases.

In the early (1897) case of *Keeler v. Clifford*, 165 Ill. 544, 547 46 N.E. 248, our supreme court said:

"* * * The question, whether a contract is entire or severable, cannot be determined by any precise rule, but must depend upon the intention of the parties, which in each case is ascertained from the language employed, and the subject matter of the contract. 'If the part to be performed by one party consists of several distinct and separate items, and the price to be paid by the other is apportioned to each items to be performed, or is left to be implied by law, such a contract will generally be held to be severable. And the same rule holds, where the price to be paid is clearly and distinctly apportioned to different parts of what is to be performed, although the latter is in its nature single and entire.' (2 Parsons on Contracts, marg. p. 517)."

This was cited and quoted from in *Sanitary District v. McMahon & Montgomery Co.* (1903), 110 Ill.App. 510, 521, and *White Brass Castings Co. v. Union Metal Manufacturing Co.* (1907), 135 Ill.App. 32, 40.

In *Amsler v. Bruner* (1912), 173 Ill.App. 337, the Fourth District, at page 345, said:

"* * * If a part to be performed by one party consists of several distinct and separate items, as in this case, and the prices to be paid by the other is apportioned to each item to be performed, or is left to be implied by law, such a contract will generally be held to be severable; and the same rule holds where the price to be paid is clearly and distinctly apportioned to different parts of what is to be performed, although the latter is in its nature single and entire. Siegel, Cooper & Co. v. Eaton & Prince Co., 165 Ill. 558. Keeler v. Clifford, 165 Ill. 544."

And in *In re Estate of Cook* (1935), 282 Ill.App. 412, the First District, at pages 416-417, said:

"The position of this court is sustained by what has been said in 13 Corpus Juris on the subject of contracts, at page 561:

1. As a general rule it may be said that a contract is entire when by its terms, nature and purpose it contemplates and intends that each and all of its parts and the consideration shall be common each to the other and interdependent. On the other hand, it is the general rule that a severable contract is one which in its nature and purpose is susceptible of division and apportionment. Ordinarily when one party contracts to do certain work or to perform certain services, and the other to pay a certain price for the same, the contract is to be regarded as entire, and an agreement to do several things at several times is to be regarded as divisible. But it is very difficult to lay down a rule which will apply to all cases, and consequently each case must depend very largely on the terms of the contract involved. A contract is not entire and indivisible because embraced in one instrument and signed by the same parties, nor is it severable because embraced in more than one instrument, nor because only partially to be performed within the state. A contract in the alternative has been held not severable.

2. Primarily the question whether a contract is entire or severable is one of intention, which intention is to be determined from the language which the parties have used and the subject matter of the agreement. A contract may both in its nature and its terms be severable and yet rendered entire by the intention of the parties'."

In *Stanmeyer v. Davis* (1944), 321 Ill.App. 227, 53 N.E.2d 22, the same court, at page 233, expressed itself as follows:

"The question of whether any contract is entire or severable must depend on the intention of the parties to be ascertained from the language of the contract and the subject matter of it. *White Brass Castings Co. v. Union Metal Mfg. Co.*, 135 Ill.App. 32; 17 C. J. S., p. 785, § 331, p. 788, § 332, p. 790, §§ 334, 335. If it appears the contract is to be performed as a whole, it is an entire contract. 12 Am. Jur. 871, § 316; *Vincent v. Laurent*, 165 Ill.App. 397. * * *"

If the contract is divisible or severable, then a portion of it can be rescinded.

In 17A C. J. S. *Contracts* § 416 (1963), it is said, in part:

"* * * Where a contract is severable, a party may exercise a

right to rescind for fraud as to a part of the contract. *  *  *"
And, in 12 I. L. P. *Contracts* § 352 (1955), it is said, in part:

"* * * Where a contract is severable, a party may exercise a right to rescind for fraud a part of the contract, but need not rescind in toto and restore all of the consideration he has received from the party at fault."

The contract in the present case contains 11 paragraphs designed to sever plaintiff from any and all interest in the corporation and to compensate him. Each paragraph is designed to dispose of a particular interest of plaintiff's and to compensate him for it. While it is true that plaintiff's compensation was meant to come largely in a single sum paid to him at the closing, the compensation paid to him was apportionable to each of the interests in the corporation that he was required to give up by the agreement. Indeed, there was no single sum thought to represent the totality of plaintiff's interests. Instead, each interest was detailed and compensated for in arriving at a final compensation. Further, a specific schedule was provided by which to deal with commissions on the sale of property that might be paid after plaintiff's departure but which related back to the time he was with the corporation when the property was listed with them for sale. Paragraph 8 dealt only with the disposition of the commission to be paid for the sale of the property at Lake Shore Drive. All other portions of the agreement had been fully executed at the time the fraud was discovered, there having been no problems associated with them. Since the consideration in the present case is susceptible to apportionment, we hold that paragraph 8 is severable from the contract. Since, as we have already noted, paragraph 8 was agreed to by plaintiff because of defendant's fraud and since paragraph 8 is severable from the rest of the agreement, we conclude that the trial court properly rescinded it.

■■ This brings us to the defendant's final contention—that Levin-Keeshin, Inc., was a necessary party to the action.

In the trial court's order granting partial summary judgment to the plaintiff, the court found that the obligation under paragraph 8 was personal; not corporate. This was a proper finding in our view because the agreement is between two persons for the transfer of interests in a corporation and does not directly involve the corporation. Indeed, there is no mention in paragraph 8 that the commission belongs to the corporation, nor is there any mention of a corporate obligation. Instead, it states that all money shall be paid to the defendant and he shall pay to plaintiff the plaintiff's share. Thus, the obligation was clearly personal. This was not, as defendant contends, a derivative action brought by shareholders

of a corporation for the benefit of the corporation. Here, the trial court in effect imposed a constructive trust on the share of the commission due the plaintiff. Defendant induced the plaintiff through fraud to agree, in paragraph 8, to accept less than 50 percent of the total commission, which is what plaintiff was entitled to according to what defendant himself acknowledged in open court to be the understanding between himself and the plaintiff. To allow defendant then to retain what is properly due to plaintiff would unjustly enrich the defendant. *Steinmetz v. Kern* (1941), 375 Ill. 616, 620, 32 N.E.2d 151.

We therefore conclude that Keeshin-Levin, Inc., was not a necessary party to this action.

Finding no error, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

McNAMARA and EGAN, JJ., concur.