M. J. McCARTHY MOTOR SALES CO. *et al.*, Plaintiffs-Appellants, *v.* VAN C. ARGIRIS & CO. *et al.*, Defendants-Appellees.

First District (1st Division)   No. 78-1334

Opinion filed November 5, 1979.

Donald J. Veverka and Michael A. Haugh, both of Speranza and Veverka, of Chicago, for appellants.

Thomas B. McNeill, Michael R. Feagley, and Stanley J. Parzen, all of Mayer, Brown & Platt, of Chicago, for appellees.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Plaintiffs M. J. McCarthy Motor Sales Co. and Mike McCarthy, individually, appeal from a summary judgment dismissing their complaints against defendants Ford Motor Co. and Hogan & Farwell, Inc. Plaintiffs alleged that Hogan & Farwell, acting as an agent for Ford, fraudulently induced the sale of real estate to Ford. Ford was an undisclosed principal. Additionally, Mike McCarthy, suing as an individual, alleged that Ford breached an oral contract to award him a dealership in California. The trial court granted summary judgment for Ford and Hogan & Farwell because it concluded that Hogan & Farwell was not in a fiduciary relationship with plaintiffs and therefore owed them no "duty" and further concluded that plaintiffs' claims were barred by the statute of limitations and statute of frauds.

On appeal, plaintiffs argue that the summary judgment was improper because (1) a fiduciary relationship is not necessary for claims based on unjust enrichment and fraud; (2) section 46(2) of the Civil Practice Act precluded the running of the statute of limitations for the causes of actions based on unjust enrichment and fraud; and (3) Mike McCarthy's action for breach of an oral contract came within the "Merchant's Exception" of the Uniform Commercial Code and was therefore not barred by the statute of frauds.

We reverse in part, affirm in part, and remand.

In 1964, plaintiff Mike McCarthy was the principal owner of three Lincoln-Mercury dealerships. Two of the dealerships were located in Chicago and the third was located in Huntington Park, California.

The Huntington Park dealership was in a deteriorating neighborhood. From 1965 to 1967 the value of the property allegedly depreciated from $100,000 to $200,000 in value. On several occasions during

this period, McCarthy met with representatives of defendant Ford Motor Company, asking to be relocated at a new dealership that was to open in Huntington Beach, California. His requests were denied but he was allegedly told to "be patient."

In May of 1967, McCarthy received a firm offer to purchase one of his Chicago dealerships. The dealership was also situated in a deteriorating neighborhood on 95th Street. The developer was willing to pay $350,000 for the property, with the intent of building an apartment complex.

After receiving the offer, McCarthy contacted the general manager of the Lincoln-Mercury division of Ford Motor Company, in Detroit, Michigan. As a result of this call, defendant Ford also offered McCarthy $350,000 for the 95th Street property. McCarthy stated that he would not accept Ford's offer unless he were relocated on the West coast. Subsequently, Ford informed him that no West coast dealerships were available. McCarthy responded that if such were the case, then Ford would have to pay $500,000 for the 95th Street property. Late in 1967, McCarthy closed the 95th Street dealership.

In March of 1968 McCarthy also resigned his Huntington Park, California, dealership. As a replacement, he opened a new Buick (General Motors) dealership just south of Los Angeles.

At this time, McCarthy also decided to put his 95th Street property on the market. The dealership was known as M. J. McCarthy Motor Sales Co., Inc., and is a plaintiff in this suit. On behalf of the 95th Street dealership, McCarthy hired defendant real estate broker Van C. Argiris & Co. to sell the property. The agreement provided that Argiris was to sell the property for $330,000 and receive the standard commission. However, the agreement also provided that "If owner sells property to Ford Motor Co., Van C. Argiris & Co. will be paid $1,000 expenses by owner." McCarthy argues that this last provision evidenced his strong desire that the property not be sold to Ford.

Also, in March of 1968, Ford management decided that it should pursue purchasing the 95th Street property. Defendant Hogan & Farwell, Inc., was retained by Ford to acquire the property on its behalf. Because Ford was not willing to pay the price previously demanded ($500,000 or $350,000, plus a California dealership), Ford and Hogan & Farwell, Inc., decided that the latter should acquire the property as purchaser and agent for Ford. Ford would be an undisclosed principal. It was also agreed that Ford would indemnify Hogan & Farwell for any legal "repercussions."

Negotiations between plaintiff and representatives of Hogan & Farwell began. On June 13, 1968, a representative from Hogan & Farwell was present in Argiris' office when one of Argiris' salesmen called McCarthy about a proposed offer of $280,000. McCarthy replied that he would accept $280,000 for the 95th Street property as long as the buyer

was not "Ford or other auto dealers." The Hogan & Farwell representative remained silent as Argiris' salesman assured McCarthy that Ford was not the purchaser.

The negotiations eventually resulted in a written offer being submitted to McCarthy in the form of a real estate contract dated July 23, 1968. The purchaser named in the contract was Hogan & Farwell, Inc., as agent for an undisclosed principal, who agreed to purchase the property for $295,000. It also provided that the $15,000 broker's commission was to be divided equally between Argiris and Hogan & Farwell.

On September 19, 1968, the sale was closed. During the closing, McCarthy again was allegedly reassured by Hogan & Farwell's representative that the premises were not going to be used for an auto dealership.

In October 1968, two weeks after the closing, Ford representatives called McCarthy and informed him that Ford had purchased his property. One week later, McCarthy wrote a letter to Simon Knudsen, Ford's president, asking to see him. They met on November 15, 1968. Exactly what transpired during this meeting is disputed.

According to McCarthy, he informed Knudsen that Ford representatives had reneged on promises to relocate his Huntington Park, California, dealership to a more favorable location in the Los Angeles area. Knudsen apparently was not that familiar with the California market, so McCarthy explained that Ford was planning to open a new dealership, several miles away, in Huntington Beach, California. According to McCarthy, he told Knudsen that he wanted that dealership and Knudsen "told me he would give me the Huntington Beach dealership when it opens up." According to McCarthy, there was no discussion about getting this "agreement" in writing.

Two weeks after that meeting, Ford representatives visited McCarthy and gave him blank application forms for the Huntington Beach dealership. McCarthy filled out the application and submitted it on December 3, 1968. The application stated in relevant part:

"APPLICATION IS HEREBY MADE for a Lincoln-Mercury Sales Agreement in the town of Huntington Beach, California * * *

IT IS UNDERSTOOD that this application is not binding upon me/us nor does it obligate Ford Motor Company in any way to enter into the Sales Agreement(s) with me/us. Any options on real estate or investments of any kind made by me/us in contemplation of the acceptance of this application are done solely on my/our own responsibility and do not obligate Ford Motor Company or any of its representatives in any way.

IT IS ALSO UNDERSTOOD that the execution between Ford

Motor Company and me/us of the Sales Agreement(s) applied for is the only manner by which Ford Motor Company may accept this application."

Three years later, in January 1972, a Ford representative informed McCarthy that he was not being considered for the Huntington Beach dealership. On January 25, 1972, McCarthy responded by sending a letter to Ford's new president, asserting that Knudsen had promised the dealership to him. Ford responded by letter denying that Knudsen had promised the dealership to him and stated further that the dealership was being awarded to someone else.

On September 19, 1972, M. J. McCarthy Motor Sales filed a suit against defendant Argiris to recover the $7,500 commission. Recovery was based on the theory of unjust enrichment.

On September 17, 1973, the first amendment to the complaint was filed. It added count II, joining as defendants, Ford and Hogan & Farwell and sought recovery of the $7,500 commission paid to Hogan & Farwell also on the theory of unjust enrichment.

On June 21, 1974, a second amendment to the complaint was filed. It amended count II of the first amendment to the complaint and added count III. In the amended count II, M. J. McCarthy Motor Sales sought compensative and punitive damages for fraud and conspiracy to commit fraud in the sale of the 95th Street property. Count III, which was pleaded in the alternative, sought recovery of the $7,500 commission paid to Hogan & Farwell, again on the theory of unjust enrichment. Both counts reflected plaintiffs' contention that Ford and Hogan & Farwell conspired to defraud M. J. McCarthy Motor Sales into selling the 95th Street property to Ford at less than the $500,000 price and further to induce payment of the full $15,000 commission.

Plaintiff Mike McCarthy, individually, commenced his action against Hogan & Farwell and Ford on June 24, 1975, when he filed his supplemental complaint. In this complaint he sought recovery of the value of the Huntington Park dealership ($100,000) and $50,000 in punitive damages. He, too, based his recovery on theories of fraud and conspiracy to commit fraud. Previously, he had sought to intervene in the action by being joined as a co-plaintiff in count II of M. J. McCarthy Motor Sales' second amendment to the complaint. The trial court, however, struck that pleading insofar as it named McCarthy in his individual capacity.

On March 29, 1976, Mike McCarthy filed an amended supplemental complaint adding an additional count alleging Ford's breach of the oral contract to award him the Huntington Beach dealership.

Defendants Ford and Hogan & Farwell filed answers and a motion for summary judgment. In granting the motion, the trial court dismissed

all counts except M. J. McCarthy Motor Sales' claim against defendant Argiris. Plaintiffs appeal, challenging each of the trial court's stated reasons for granting the summary judgment.

Plaintiffs first argue that it was error for the trial court to grant Ford and Hogan & Farwell a summary judgment on the ground that "no duty" was owed plaintiffs. Plaintiffs contend that a fiduciary duty is irrelevant to claims based on unjust enrichment and fraud.

■■ ■ We agree. An action for unjust enrichment is maintainable in all cases where one person has received money under such circumstances that in equity and good conscience, he ought not retain it. (*Cohon v. Oscar L. Paris Co.* (1958), 17 Ill. App. 2d 21, 149 N.E.2d 472.) Where money is paid under mistake of fact and payment would not have been made but for the mistake, it can be recovered, even though the person to whom it was paid acted fairly and in good faith. (*Salvati v. Streator Township High School Dist. Number 40* (1964), 51 Ill. App. 2d 1, 200 N.E.2d 122.) None of these cases mention a "duty" or privity requirement. Accordingly, under the facts in this case, we believe there is sufficient evidence from which a jury could conclude that but for M. J. McCarthy's mistake of fact that neither Ford nor any other auto dealer was the purchaser of the 95th Street property, the $15,000 commission would not have been paid.

■■ ■ As to the causes of action for fraud and conspiracy to commit fraud, it is clear that Hogan & Farwell, as a party to the contract, was required to act in good faith and refrain from misrepresenting material facts. Thus, Hogan & Farwell had an obligation to plaintiffs. Numerous cases have allowed rescission of a sales contract where the seller was fraudulently induced to contract because of misrepresentation as to the intended use of the premises or the identity of the purchaser. (*Roda v. Berko* (1948), 401 Ill. 335, 81 N.E.2d 912; *Ash Grove Lime & Portland Cement Co. v. White* (1951), 361 Mo. 1111, 238 S.W.2d 368; *Frear v. Roberts* (1947), 51 N.M. 137, 179 P.2d 998; *White Tower Management Corp. v. Taglino* (1939), 302 Mass. 453, 19 N.E.2d 700.) In the instant case plaintiffs alleged that Hogan & Farwell made express assurances that Ford was not the purchaser and that the premises were not going to be used as an auto dealership. There is therefore a serious question as to whether Hogan & Farwell breached its duty of good faith and fair dealing in order to induce the sale of the 95th Street property. It was therefore improper for the trial court to grant a summary judgment for Hogan & Farwell on the basis that no duty was owed plaintiffs.

Plaintiffs next argue that the trial court erred in finding that the allegations of unjust enrichment, fraud and conspiracy to commit fraud set forth in counts II and III of M. J. McCarthy's second amendment to the complaint had lapsed. The trial court ruled that these causes of action were barred by the five-year statute of limitations set forth in section 15 of

the Limitations Act (Ill. Rev. Stat. 1977, ch. 83, par. 16), and were not saved by the relation back provision of section 46(2) (Ill. Rev. Stat. 1977, ch. 110, par. 46(2)). It was the trial judge's view that these claims could be asserted no later than October 3, 1973, five years after the day McCarthy discovered that Ford was the actual purchaser of the 95th Street property. ■■ We disagree. Section 46(2) of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 46(2)) states in relevant part:

> "The cause of action * * * set up in any amended pleading shall not be barred by lapse of time under any statute * * * prescribing or limiting the time within which an action may be brought or right asserted, if the time prescribed or limited had not expired when the original pleading was filed and if it shall appear from the original and amended pleading that the cause of action asserted * * * in the amended pleading grew out of the same transaction or occurrence set up in the original pleading * * * and for the purpose of preserving as aforesaid the cause of action * * * set up in the amended pleading, and for that purpose only, an amendment to any pleading shall be held to relate back to the date of the filing of the original pleading so amended."

The law is clear that so long as the amended pleading alleges matters that grew out of the same transaction or occurrence set forth at the time of the original filing, such pleading shall relate back to the original filing and not be barred by the statute of limitations. (*Halberstadt v. Harris Trust & Savings Bank* (1973), 55 Ill. 2d 121, 302 N.E.2d 64; *Pleasant v. Certified Grocers of Illinois, Inc.* (1976), 39 Ill. App. 3d 83, 350 N.E.2d 65; *Allen v. Kewanee Machinery & Conveyor Co.* (1974), 23 Ill. App. 3d 158, 318 N.E.2d 696.) Further, an amendment alleging a new or different type of cause of action will not be barred by the statute of limitations as long as it arose out of the same occurrence alleged in the original pleadings. (*Cain v. New York Central R.R. Co.* (1962), 35 Ill. App. 2d 333, 182 N.E.2d 910.) It is believed that under such circumstances, the defendant will not be prejudiced by the filing of the amendment because the original pleading will have provided sufficient opportunity to investigate the facts upon which liability is asserted. *Halberstadt v. Harris Trust & Savings Bank* (1973), 55 Ill. 2d 121, 302 N.E.2d 64.

A representative case is *O'Leary v. Siegel* (1970), 120 Ill. App. 2d 12, 256 N.E.2d 127. In that case, plaintiff filed a suit alleging specific violations of the Structural Work Act. Four years after the two-year statute of limitations allowing recovery for personal injuries had run, plaintiff added a second count alleging common law negligence. The trial court refused to strike the second count, finding that it related back to the time of the original filing under section 46(2). The appellate court agreed, stating:

> "[W]e are of the opinion that Section 46(2) is operative in the

present case, and the amended complaint relates back under the statute. The question of conduct required under the separate counts in no way prejudices Seco's defense of the case, since the 'specified conduct' arises from the facts originally alleged, such facts presenting sufficient notice as to the nature of liability asserted." 120 Ill. App. 2d 12, 23, 256 N.E.2d 127, 133.

■■ ■ In the present case, we believe the second amendment to the complaint filed on June 21, 1974, related back to the timely filed first amendment to the complaint. That amendment was filed on September 17, 1973, and joined Ford and Hogan & Farwell as defendants. It sought recovery of the broker's commission paid to Hogan & Farwell alleging that Hogan & Farwell accepted a $7,500 commission, knowing full well that a fee of only $1,000 was to be paid if the property were purchased by Ford. Though recovery was based solely on the theory of unjust enrichment, the complaint sufficiently smacked of fraud so as to afford defendants a sufficient opportunity to investigate the factors upon which liability was based without being prejudiced by the filing of the second amendment to the complaint which alleged fraud and conspiracy to commit fraud. As noted in *Simmons v. Hendricks* (1965), 32 Ill. 2d 489, 497, 207 N.E.2d 440, 444:

> "Instead of splitting hairs over types of faults, the inquiry is whether there is enough in the original description to indicate that plaintiff is not attempting to slip in an entirely distinct claim in violation of the spirit of the limitations act. The test is to be a real one, rather than one based upon artificial rules of pleading."

That test has been met here. Accordingly, it was erroneous for the trial judge to conclude that count II of the second amendment to the complaint was barred by the statute of limitations. It was also erroneous for the trial judge to conclude that count III of the second amendment to the complaint was barred by the statute of limitations since that count was merely a restatement of the just enrichment cause of action against Hogan & Farwell already alleged in the timely filed first amendment to the complaint. As such, it undoubtedly related back to the time of the original filing as contemplated in section 46(2) and could not have possibly prejudiced defendants.

Lastly, plaintiffs argue that the trial court erred in dismissing Mike McCarthy's amended supplemental complaint. Count I which sought damages because of alleged fraud in the inducement to sell the 95th Street property was dismissed because the trial court believed it to be barred by the statute of limitations. Count II, which sought damages for Ford's alleged breach of oral contract to award McCarthy the Huntington Beach dealership, was dismissed because the alleged contract violated the

statute of frauds. We believe that the trial court erroneously dismissed count I, but properly dismissed count II.

From our previous discussion of section 46(2) and the application of its relation back provision, it is clear that count I, though filed beyond the statute of limitations, related back to the timely filed first amendment to the complaint, as did M. J. McCarthy Motor Sales' second amendment to the complaint. Count II of the second amendment to the complaint and count I of Mike McCarthy's amended supplemental complaint are virtually identical. Because they both arose out of the same transaction, they both related back to the timely filed first amendment to the complaint filed by M. J. McCarthy Motor Sales. Accordingly, neither count was barred by the statute of limitations.

Count II of Mike McCarthy's amended supplemental complaint is another matter, however. Plaintiffs and defendants agree that Ford's alleged November 15, 1968, oral agreement to award Mike McCarthy the Huntington Beach dealership "when it should become available" was a contract for the sale of goods for the price of $500 or more. As such, it was governed by article 2 of the Uniform Commercial Code, as codified in the California Commercial Code. Under the terms of section 2201(1) of the California Commercial Code (Cal. Comm. Code, par. 2201(1) (Deering)), such a contract is unenforceable unless in a writing signed by the party against whom enforcement is sought. However, plaintiffs argue that the writing requirement was satisfied under the so called "Merchant's Exception" contained in section 2201(2) which provides:

> "(2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirement of subdivision (1) against such party unless written objection to its contents is given within 10 days after it is received."

Plaintiffs argue that Mike McCarthy's written application for the Huntington Beach dealership satisfied section 2201(2).

■■ We find this argument unpersuasive. First of all, the application is, on its face, only an offer for a dealership. It does not in any way refer to the alleged agreement between Knudsen and McCarthy. In fact, the application specifically states that Ford is in no way bound to enter into a sales agreement. In *Franklin v. Hansen* (1963), 59 Cal. 2d 570, 381 P.2d 386, 30 Cal. Rptr. 530, the California Supreme Court noted that where a writing discloses no promise or agreement and cannot be made clear as to its significance without resort to parol evidence, it is insufficient to satisfy the statute of frauds. We therefore conclude that the trial court correctly ruled that Mike McCarthy's claim for breach of an oral contract was unenforceable. We also reject plaintiffs' contention that defendants are

734

precluded from raising the statute of frauds because "unconscionable injury" will result. This argument was not raised in the court below and was consequently waived.

Accordingly, for the foregoing reasons the order dismissing counts II and III of M.J. McCarthy's second amendment to the complaint is reversed, and the cause is remanded for further proceedings consistent with this opinion. That part of the order dismissing count I of Mike McCarthy's amended supplemental complaint is also reversed and remanded; that part dismissing count II is affirmed.

Order reversed in part, affirmed in part; cause remanded.

O'CONNOR and CAMPBELL, JJ., concur.