RONALD G. LENZI *et al.*, Plaintiffs-Appellants, *v.* RUTH A. MORKIN, Indiv. and as Co-Ex'x of the Estate of Alma M. Dalmar and as Co-Trustee of the Alma Dalmar 1979 Trust, Defendant-Appellee.

First District (First Division)   No. 82—2037.

Opinion filed July 25, 1983.

McGLOON, J., dissenting.

Leon C. Wexler, of Chicago, for appellants.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Robert E. Deignan, George H. Olsen, and Gerald L. Maatman, Jr., of counsel), for appellee.

JUSTICE GOLDBERG delivered the opinion of the court:

Ronald G. Lenzi and Geraldine J. Lenzi (plaintiffs) brought this action against Ruth A. Morkin, individually, as co-executor of the estate of Alma Dalmar, and as co-trustee of the Alma Dalmar 1979 trust (defendant). Plaintiffs allege failure of defendant to disclose an assessor's revaluation of property purchased by plaintiffs from defendant. The trial court granted defendant's motion to dismiss plaintiffs' complaint. (Ill. Rev. Stat. 1981, ch. 110, par. 2—619.) Plaintiffs appeal.

In adjudicating a motion to dismiss, all facts well pleaded in the complaint are accepted as true. *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 329, 371 N.E.2d 634.

According to plaintiffs' complaint, plaintiffs purchased a residence from defendant. Their written contract was dated March 23, 1981, and the transaction was closed on May 27, 1981. The purchase price was $340,000, all in cash. The standard form real estate purchase contract provided for a proration of real estate taxes "based on most recent ascertainable taxes." The 1979 real estate taxes, in the amount of $2,893.79, were based on an assessed valuation of $18,712. On or about February 24, 1981, defendant received a revaluation from the assessor of Cook County increasing the valuation of the property to $27,701. Plaintiffs alleged defendant "intentionally failed to disclose" that information to plaintiffs, although defendant "knew that the purchasers relied upon the last tax bill to determine the most recently ascertainable taxes ***." Plaintiffs seek an additional tax proration of $2,831 based upon a subsequent increase in the 1980 general taxes.

Plaintiffs contend the valuation change made the definition of the phrase "most recent ascertainable taxes" a factual question which should be determined by a jury. "As a general rule, the interpretation, construction or legal effect of a contract is a matter to be determined by the courts as a question of law." (*Sherbrooke Homes, Ltd. v. Krawczyk* (1980), 82 Ill. App. 3d 990, 992, 403 N.E.2d 622, and cases there cited.) Unless a contract is ambiguous, its terms must be interpreted according to the language used. (*Herbert H. Rozoff Associates, Inc. v. Purity Corp.* (1977), 56 Ill. App. 3d 1, 371 N.E.2d 976, *appeal denied* (1978), 71 Ill. 2d 598.) The question of whether a contract is ambiguous is entirely a matter of law to be determined by

the court. (*Chicago Investment Corp. v. Dolins* (1981), 93 Ill. App. 3d 971, 974, 418 N.E.2d 59.) A contract term is ambiguous only if the language used is reasonably and fairly susceptible to more than one meaning. (*In re Marriage of Whetstone* (1980), 87 Ill. App. 3d 164, 166-67, 409 N.E.2d 41.) We agree with the determination of law by the trial court that the contract at issue is not ambiguous. Therefore, we may not look to extrinsic evidence to interpret the contract. *Schek v. Chicago Transit Authority* (1969), 42 Ill. 2d 362, 247 N.E.2d 886.

In a case factually apposite to the case at bar, *3700 S. Kedzie Building Corp. v. Chicago Steel Foundry Co.* (1959), 20 Ill. App. 2d 483, 156 N.E.2d 618, this court upheld summary judgment for defendant (seller) where plaintiff (buyer) alleged fraud in a real estate contract. As in the case at bar, this court was called upon to interpret the term "most recently ascertainable taxes." The court concluded the phrase meant that the parties were required to work out the prorations on the basis of the last available completed tax bill. The court stated (20 Ill. App. 2d 483, 486):

> "The equalization factor was not established until February 14, 1956, and the rate was not established until March 22, 1956. The words of the contract mean that if the 1955 taxes were not ascertainable in amount at the time of closing, the parties were required to use the 1954 taxes which were then ascertainable to make the prorations. The parties in entering into the contract chose the method of effecting the proration of real estate taxes. The risk was on both parties that the taxes might change either up or down when the 1955 taxes became determined."

As correctly pointed out by counsel for defendant in the instant case, the real estate tax is computed upon three distinct bases: the assessed value of the property, the State equalization factor (Ill. Rev. Stat. 1981, ch. 120, par. 630), and the applicable tax rate (Ill. Rev. Stat. 1981, ch. 120, par. 643). The State equalization factor is determined after an annual comparison of the assessed valuation of property throughout the State. The applicable tax rate is determined by the county clerk. In the case at bar the amount of the tax bill for 1980 could not be "ascertained" until all of these items had been determined by the proper governmental authorities. There is no allegation in plaintiffs' complaint that the State equalization factor and the precise tax rate to be applied to the new valuation were established. It followed inevitably that the amount of the general taxes for the year 1980 were not "ascertainable." Therefore, as held in *3700 S. Kedzie*, we hold in the case at bar, the "most recent ascertainable

taxes" were reflected in the 1979 tax bill.

Plaintiffs next contend it is not customary to check records of the assessor to determine valuation of the property before closing. This contention has no legal significance. Plaintiffs cite *Rizakos v. Kekos* (1977), 56 Ill. App. 3d 404, 371 N.E.2d 896, *appeal denied* (1978), 71 Ill. 2d 601. That case involves the right of a signatory to a real estate sale contract to specific performance where the contract was signed by trust beneficiaries and not by the land trustee.

In this connection plaintiffs cite *Rotello v. Scott* (1981), 95 Ill. App. 3d 248, 419 N.E.2d 1233. That case has no significance here. It involves a "negligent misrepresentation" by the seller of an easement regarding the connection of the property to a sewer. (95 Ill. App. 3d 248, 250.) Furthermore, in the case at bar, since the contract is not ambiguous, extrinsic evidence may not be considered. See *Schek v. Chicago Transit Authority* (1969), 42 Ill. 2d 362, 364.

■ Finally, plaintiffs contend their complaint stated a cause of action for fraud. It is clear from a reading of plaintiffs' complaint that it is woefully insufficient to allege a cause of action in fraud. To establish a *prima facie* case of fraud, one must allege a knowing misstatement of material fact, which is reasonably relied upon by plaintiffs. (*Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282, 402 N.E.2d 599; see also *Broberg v. Mann* (1965), 66 Ill. App. 2d 134, 139, 213 N.E.2d 89.) In the case at bar, plaintiffs' complaint alleges that defendant "intentionally failed to disclose" the change in the assessor's valuation.

Plaintiffs' complaint also alleges that the defendant knew the purchasers relied upon the last tax bill to determine the most recently ascertainable taxes, "when in fact, the reassessment provided a means for ascertaining taxes in excess of the last real estate tax bill."

In this regard, the complaint is entirely insufficient to establish fraud. The amount of valuation of the property was not a matter solely within the knowledge of defendant. The valuation placed upon the property by the assessor was a matter of public record. It was open to the general public, to plaintiffs as well as to defendant. Plaintiffs themselves chose not to investigate in any manner the valuation of the property. Pursuant to the contract signed by them, they treated the 1979 general tax bill as the most recently ascertainable information, which in fact it was.

In our opinion, the closest case to the one at bar is *3700 S. Kedzie Building Corp. v. Chicago Steel Foundry Co.* (1959), 20 Ill. App. 2d 483. There, defendant sold plaintiff a piece of real estate. The contract, precisely as in the case at bar, provided for proration of taxes

on the basis of the most recent ascertainable taxes. Defendant represented to plaintiffs that the taxes for 1955 were not ascertainable but that they would be approximately the same as the taxes for 1954. The taxes were prorated on that basis but the buyer received a much higher tax bill for the year 1955. The buyer claimed fraud on this basis. The trial court held for defendant and this court affirmed. 20 Ill. App. 2d 483, 488.

This court cited *Morel v. Masalski* (1928), 333 Ill. 41, 164 N.E. 205, to the effect that the plaintiff had no legal right to depend upon the representations made by the defendant with reference to what future taxes might be. This court pointed out that, "The 'facts' which plaintiff alleged as the basis of its cause of action for misrepresentation were available in the records of the Assessor. Under these circumstances the plaintiff is chargeable with knowledge and cannot claim it is deceived." (20 Ill. App. 2d 483, 487-88.) In addition to *Morel* this court cited *Bundesen v. Lewis* (1938), 368 Ill. 623, 15 N.E.2d 520.

The case at bar is much stronger for the defendant as seller than these other cited cases. There is no allegation in plaintiffs' complaint regarding misrepresentation of any kind by defendant. The allegation simply is that defendant was advised of the change in the assessed valuation. As shown, this information pertained strictly to a public record available to plaintiffs, precisely to the same extent that it was available to defendant.

This difference impelled plaintiffs to attempt to strengthen their case by treating the transaction as a situation in which fraud could be found in view of the alleged duty of defendant to disclose the information. With leave of court, plaintiffs cited as additional authority *Posner v. Davis* (1979), 76 Ill. App. 3d 638, 395 N.E.2d 133. There, plaintiffs sued for fraud upon the basis of silence and concealment. Plaintiffs purchased a piece of residential property from defendants. As this court pointed out, there had been serious basement flooding in the premises which was actively concealed by defendants. For example, defendants covered the basement floor with a rug and coated the bedroom walls with vinyl. (*Posner v. Davis* (1979), 76 Ill. App. 3d 638, 643.) This court found this conduct was tantamount to fraudulent concealment. The court cited and relied upon *Petersen v. Hubschman Construction Co.* (1979), 76 Ill. 2d 31, 389 N.E.2d 1154, to illustrate the implied warranty of habitability which the supreme court had then recently imposed upon the sale of a new home by the builder. (76 Ill. App. 3d 638, 644.) However, at the same page of the opinion, this court pointed out that "silence alone, absent the existence of a confi-

dential relationship, generally does not amount to fraud." (76 Ill. App. 3d 638, 644.) Under no circumstances can we equate simple silence regarding a public record freely open to all persons with the type of fraudulent concealment illustrated by *Posner*.

For these reasons the judgment appealed from is affirmed.

Judgment affirmed.

CAMPBELL, J., concurs.

JUSTICE McGLOON, dissenting:

I respectfully dissent from the decision of my colleagues and would reverse the order dismissing the complaint and remand the cause for a trial on the merits.

The majority opinion is based in part on contract law. My colleagues hold that the contract plainly, clearly and unambiguously provides for proration on the basis of the most recently ascertainable tax, that the tax could not be ascertained solely on the basis of assessed value, and that the parties therefore agreed to prorate using the 1979 tax bill. In so holding, the majority appears to agree with defendant's argument that plaintiffs are merely attempting to alter the terms of the contract.

However, I would not resort to contract law to decide this case and do not believe it is applicable. Plaintiffs' action is not based on the contract. Rather, it is based on fraud, an action sounding in tort. The formation of the contractual relationship and the conveyance merely demonstrate the necessary elements of reliance and damages essential to proof of fraud. (*Reimer v. Leshtz* (1980), 90 Ill. App. 3d 980, 414 N.E.2d 114.) Although I agree with the majority's interpretation of the term "most recently ascertainable tax," I find that the interpretation is irrelevant to the appeal because it is a matter of contract law which, as noted above, is not the basis for the action. Thus, the issue before this court is whether plaintiffs stated a cause of action for fraud.

My colleagues have found that the complaint did not state a cause of action based on fraud. They reason that defendant had no duty to advise plaintiffs of the change in assessed value because the information was equally accessible to plaintiffs in public records. They further rely on the court's statement in *Posner v. Davis* (1979), 76 Ill. App. 3d 638, 395 N.E.2d 133, that in the absence of a fiduciary or confidential relationship, silence alone does not amount to fraud. I disagree with the majority's reasoning.

First, I believe defendant had a duty to disclose the reassessed value. The trend in the law regarding the sale of used homes is toward the erosion of the doctrine of *caveat emptor*. (*Posner v. Davis* (1979), 76 Ill. App. 3d 638, 395 N.E.2d 133, and cases cited therein.) Although most of the cases dealing with the amelioration of the doctrine involve failure to disclose material defects in the home of which the seller was aware at the time of closing, I would extend the underlying theory and principles to cases where the misrepresentations and nondisclosures affect material terms of the sales contract. The concealed fact in this case was a material fact because had plaintiffs known of the increased assessment, they most assuredly would have acted differently in negotiating the tax proration clause in the contract. *Perlman v. Time, Inc.* (1978), 64 Ill. App. 3d 190, 380 N.E.2d 1040.

Also, the fact that the information was a matter of public record should not preclude the maintenance of an action for fraud. As alleged in the complaint, defendant knew prior to signing the contract that the assessed value of the property had been increased 50%, yet she failed to inform plaintiffs. Defendant was allegedly the party possessed of knowledge and capable of making representations to plaintiffs. In the absence of circumstances putting reasonable men on inquiry, plaintiffs were justified in relying on the representations without further inquiry where the misrepresentation concerned a matter assumed to be within the knowledge of the defendant. (*Keeshin v. Levin* (1975), 31 Ill. App. 3d 790, 334 N.E.2d 898.) Additionally, plaintiffs should not be required to test the accuracy of the representations where defendant has lulled him into a feeling of false security. (*Mother Earth, Ltd. v. Strawberry Camel, Ltd.* (1979), 72 Ill. App. 3d 37, 390 N.E.2d 393.) Regarding the majority's finding that plaintiff must plead the existence of a fiduciary or confidential relationship, I would note that a fiduciary duty is not necessary for claims based on fraud. *M. J. McCarthy Motor Sales Co. v. Van C. Argiris & Co.* (1979), 78 Ill. App. 3d 725, 396 N.E.2d 1253.

For these reasons, I find that plaintiffs' complaint stated a cause of action based on fraud. Plaintiffs should be allowed their day in court to prove their allegations.