Stephen A. Paoli and Arthur Paoli, Copartners, d/b/a Arthur Paoli & Son, Plaintiffs-Appellants, v. Zip-out, Inc., an Illinois Corporation, Defendant-Appellee.

Gen. No. 11,225.

Second District, First Division.

March 24, 1959.

Released for publication April 11, 1959.

Miller, Thomas, Hickey & Collins, of Rockford (Francis E. Hickey, Edwin T. Powers, Jr., of counsel) for appellants.

Hyer, Gill & Brown, of Rockford (James M. Brown, of counsel) for appellee.

JUSTICE McNEAL delivered the opinion of the court.

Stephen A. Paoli and Arthur Paoli, copartners, brought this suit to cancel a license agreement granted to the defendant, Zipout, Inc. In a previous suit the Paolis had dismissed a count for cancellation of the contract and had proceeded to judgment against defendant on a count for royalties due under the agreement. The trial court held that by such procedure plaintiffs had elected to affirm the agreement, and were precluded from cancelling the contract in this suit on account of defendant's non-payment of the same royalties. The court dismissed plaintiffs' complaint and entered final judgment, and this appeal followed.

The agreement made on October 19, 1951, recited that plaintiffs owned patents for a device for peeling, cleaning and deveining shrimp, together with a copyright of the name ZIPOUT. By the agreement plaintiffs granted defendant an exclusive license to make, manufacture, vend, use and distribute the device throughout all foreign countries and the United States and its territories and dependencies, during the life of the patents. Defendant paid $30,000 advance royalties and agreed to pay plaintiffs royalties for five years, in quarterly installments of $4150 each beginning on June 30, 1952, and payable on the last days of September, December, March and June until March 31, 1957, and thereafter the annual sum of $100 during the remaining useful life of the patents. Defendant was authorized to prosecute or defend suits involving infringement of the patents, and plaintiffs were required to advance or be liable for one-half of the expense of such prosecution or defense, to be deducted from royalties due or to become due. If such royalties

54

were insufficient and plaintiffs failed to pay half of the expense, defendant had the option to terminate the agreement. The agreement also provided that in case royalties were in default for a period of 30 days, then by written notice of such default plaintiffs could require defendant to correct the default within a period of 30 days following such notice, and upon defendant's failure so to do, the license would thereupon become void and all rights, privileges and interest created by the agreement would revert to plaintiffs.

In the complaint filed in the instant case on January 8, 1958, plaintiffs alleged: That defendant failed to pay royalties due on June 30, September 30 and December 31, 1956, in the amount of $12,450; that plaintiffs gave defendant the prescribed notices to correct its defaults in failing to pay such quarterly royalties, and also a notice terminating the agreement; that after allowing all credits and set-offs, the deficit in the payment of royalties amounted to $4875.88; and that the Circuit Court of Winnebago County entered judgment for this amount in favor of plaintiffs and against defendant on September 19, 1957, in Chancery No. 68075. A copy of the judgment order attached to the complaint shows that count II of the complaint in that case was dismissed on plaintiffs' motion. In the instant complaint plaintiffs prayed that the court declare the license agreement terminated and order defendant to reconvey all right, title and interest under the agreement to plaintiffs.

Defendant denied that plaintiffs are entitled to the relief prayed for, and denied any failure to pay royalties or breach of the agreement. Defendant admitted that judgment was entered in No. 68075 for $4875.88, and alleged that the judgment had been paid. Defendant further alleged that the complaint in No. 68075 consisted of two counts; that count I was for royalties due and for specific performance and an affirmance

of the contract, while count II was for rescission or forfeiture and a disaffirmance of the contract; that at defendant's request the court required plaintiffs to elect under which count they would proceed, and plaintiffs elected to proceed under count I; and that having once so elected and prosecuted said count I to judgment, and abandoned the inconsistent remedy, plaintiffs are now precluded and estopped from going back and electing again. In their reply plaintiffs denied the allegations contained in defendant's answer.

The cause was heard by the court upon a stipulation of facts. In substance the parties stipulated and the court found that the instant suit is based upon the same notices of default and termination as those involved in No. 68075. The court further found that in No. 68075 defendant requested plaintiffs to elect whether they would proceed under count I for specific performance and affirmance of the contract, or under count II for forfeiture or cancellation and disaffirmance of the contract; that plaintiffs dismissed count II and elected to proceed under count I; that by the decree therein royalties were found to be due plaintiffs in the sum of $4875.88, which judgment was paid by defendant and satisfaction thereof was entered; that such election constituted an election of remedies; and that plaintiffs are now precluded from going back and electing again and asserting the right to forfeit or cancel which they had dismissed and abandoned. It also appears that in the former suit the court interpreted the contract to require payment of royalties on the due date regardless of patent litigation expense accruing during the sixty-day correction period permitted by the contract, and there held that such expense should be credited against the following quarterly royalty payment; and that defendant had paid patent litigation expense amounting to $8789.76 since the judgment was entered.

■ As a general rule, a remedy based on the theory of the affirmance of a contract or other transaction is inconsistent with a remedy arising out of the same facts and based on the theory of its disaffirmance or rescission, and the election of either remedy is an abandonment of the other. 28 C. J. S. 1070. In Wollenberger v. Hoover, 346 Ill. 511, 543, the Court said: "An election to affirm a contract of sale is entirely inconsistent with an election to rescind it, and when either election is made with full knowledge of the facts, the other election is absolutely barred. The law never recognizes the inconsistent claim of a vendor who is defrauded or attempted to be defrauded by his vendee or assignee to insist on the full payment of his purchase money under a contract of sale and at the same time to insist on the right to have the contract set aside for the fraud practiced on him and the title reinvested in him, but the law does give him the right to elect and have the benefit of either one of those remedies or of any other remedy available to him. It seems to us the foregoing propositions are so elementary as to require no argument or citation of authorities to support them."

In Greenduck Co. v. Green River Distilling Co., 172 Ill. App. 357, the plaintiff sold 10,320 watch fobs to defendant. After receipt of notice that defendant would not accept the fobs or pay for them, plaintiff elected to affirm the sale and brought suit against defendant for the price of the fobs, and in that suit, after a trial on the merits, an adjudication was had in favor of the defendant. Subsequently plaintiff brought an action of replevin for damages for the wrongful detention by the defendant of the same watch fobs. The Court said: "Any decisive act of a party, with knowledge of his rights and of the facts, determines his election in case of conflicting and inconsistent remedies. . . . The prosecution of one remedial right

57

to judgment or decree, whether the judgment or decree is for or against plaintiff, is a decisive act which constitutes a conclusive election, barring the subsequent prosecution of inconsistent remedial rights." To the same effect, see: Kaszab v. Metropolitan State Bank, 264 Ill. App. 358, 368; 28 C. J. S. 1087.

In first Nat. Securities Co. of Barrington v. Ward, 275 Ill. App. 521, 529, plaintiff sued for the balance of installments due from vendee on a contract for the purchase of real estate. While the suit was pending, plaintiff elected to forfeit and determine the contract, commenced a forcible detainer proceedings and secured a judgment for the possession of the premises involved. The Court said: "Under these undisputed facts we think that plaintiff's attempt afterward to maintain the present action on said contract, notwithstanding the inconsistent position and actions taken by it, is contrary to the authorities and the law."

In Kittle Mfg. Co. v. Davis, 8 Cal.App.2d 504, 47 P.2d 1089, 1093, Davis had granted Kittle an exclusive license to manufacture and sell patented camp beds. Kittle paid royalties for over two years and then discontinued all payments. Davis brought suit for recovery of royalties. Kittle denied liability, but the court rendered judgment for $16,000 in favor of Davis. Thereafter Kittle sued Davis for breach of contract. The trial court concluded that Davis had violated the license agreement by manufacturing another type of camp bed which was merely a modification of the type licensed to Kittle, but entered judgment in favor of Davis. On appeal the Court said: "The conclusion of the trial court that plaintiff could not maintain this action because of its failure to pay royalties was erroneous. It was expressly found that the contract was not terminated. If Davis had the right to terminate it, he waived that right when he sued for the recovery of royalties. . . . When Kittle failed to pay royalties,

58

Davis had the right to treat the contract as terminated and sue for damages, or he had a right to sue for the royalties. . . . He could not do both. He made his election and having exacted performance from Kittle he cannot justly escape responsibility for his own non-performance. The contract must be enforced against both parties or against neither." The judgment was reversed to allow a retrial on the issue of damages suffered by Kittle subsequent to the trial of Davis v. Kittle.

 It is conceded, as suggested by plaintiffs, that where a party's remedies are coexistent and consistent with each other, he may pursue all or select any one which he thinks best suited to the end sought, but the satisfaction of the claim in one case constitutes a bar of the other. Fleming v. Dillon, 370 Ill. 325, 331, 18 N.E.2d 910. Likewise, the voluntary dismissal of a cause of action without prejudice does not preclude the filing of a new action. In the instant case, however, the remedies available to plaintiffs in the former suit proceeded from opposite and irreconcilable claims of right and were so inconsistent that plaintiffs could not logically follow one without renouncing the other. There is nothing in this record indicating that defendant concealed any fact from plaintiffs or that they did not have full knowledge of all facts involved. Plaintiffs' election of remedies did not result alone from their dismissal of count II in the former suit, but from their prosecution of count I to judgment. It has been uniformly held that the prosecution of a remedy to a judgment on the merits and full satisfaction thereof constitutes a conclusive choice precluding subsequent pursuance of an inconsistent remedy.

 We conclude that plaintiffs' prosecution to judgment of count I in the former suit for the same royalties involved here with full knowledge of the facts, constituted an affirmance of the contract. The

59

former suit is a bar to the prosecution of a suit thereafter for rescission of the contract based upon the same breach of contract. The judgment of the Circuit Court of Winnebago County dismissing plaintiffs' complaint in the instant case was correct, and is therefore affirmed.

Judgment affirmed.

SPIVEY, P. J. and DOVE, J., concur.