**Peter M. ROBERTS, Plaintiff-Appellee,**

v.

**SEARS, ROEBUCK AND CO., a corporation, Defendant-Appellant.**

No. 79–1616.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 7, 1980.

Decided March 12, 1980.

Rehearing and Rehearing In Banc Denied June 17, 1980.

Peter D. Kasdin, Chicago, Ill., for defendant-appellant.

Louis G. Davidson, Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, SPRECHER and BAUER, Circuit Judges.

SPRECHER, Circuit Judge.

This appeal arises out of a basic misunderstanding upon remand of the mandate conveyed by the prior appeal.

## I

The plaintiff inventor sued the defendant retail store chain for breach of confidential relation, fraud, and negligent misrepresentation. The plaintiff prayed for rescission of the agreement assigning the patent rights to the defendant, an injunction against further use by the defendant, imposition of a constructive trust upon the defendant, an equitable accounting by the defendant and "such further equitable relief as may be appropriate." Included among these equitable prayers was a plea "that damages be awarded to plaintiff."

The original complaint was endorsed "plaintiff demands trial by jury." Relatively early in the proceedings, the plaintiff moved for recognition of his right to a jury trial. The district judge who was then assigned to the case stated in his order of May 10, 1973 that he "would characterize this action as equitable, being basically one for rescission with damages merely incidental to the equitable claims." The complaint at that time included two additional counts involving the infringement of the patent. Concluding that validity and infringement of a patent are matters of law to be decided by a jury, the judge ordered that plaintiff's right to a jury be affirmed. Prior to the jury trial, the plaintiff abandoned the two counts pertaining to patent matters and eliminated the prayer for an injunction in the remaining counts.

A jury trial was held from December 20, 1976 through January 18, 1977. At the conclusion, the district court instructed the jury that the complaint encompassed three separate claims: breach of a confidential relation, fraudulent misrepresentations and negligent misrepresentations. The court instructed the jury as follows in regard to money damages:

If you find in favor of the plaintiff upon either the first or second claim, then, one of the elements of the money damages to be considered by you may be the net value to the defendant of the profits and benefits derived from the use of plaintiff's invention. The award of money damages you make may equal the net profits which you find the defendant gained as a result of its merchandising of wrenches incorporating plaintiff's Quick Release invention and idea, minus any expenditures which you find the defendant has proved it incurred which it would not have incurred had it not merchandised such wrenches incorporating plaintiff's Quick Release invention and idea from the time of the contract in question to the present.

However, if you decide in favor of the plaintiff only upon the third claim, then, one of the elements of the money damages to be considered by you may be the value of a reasonable royalty on the Quick Release wrenches sold by the defendant from the time of the contract in question to the present.

The court further instructed the jury that "as a matter of law, any damages you may award under each claim will not be cumulative, and the plaintiff will not be permitted to collect damages under more than one claim." Separate verdict forms were supplied for each of the three claims. The jury found for the plaintiff on each claim and awarded damages of $1,000,000 on each claim. It is conceded by both parties that the one million dollar judgment is the total amount awarded by the jury (see, e. g., *Brief of Plaintiff* at 5). This judgment has been satisfied and the plaintiff has collected $1,000,000.

In a post-trial motion, the plaintiff sought equitable rescission and restitution. The district court held that when the plaintiff permitted the case to go to the jury he had elected his legal remedy under Illinois law and could not later also seek equitable relief. Plaintiff appealed, seeking the right to full equitable relief over and beyond the one million dollar legal relief. The defendant cross-appealed to set aside the money judgment against it.

In *Roberts v. Sears, Roebuck and Co.*, 573 F.2d 976 (7th Cir. 1978), *cert. denied*, 439 U.S. 860, 99 S.Ct. 179, 58 L.Ed.2d 168 (1978), we affirmed the district court's judgment against defendant on all three claims in plaintiff's complaint and the court's decision not to alter plaintiff's monetary award, but reversed the court's determination that it lacked the power to award rescission and remanded to the district court for a determination of whether rescission is appropriate under the facts of this case.

Although this is a diversity case, we held that where a state procedural rule is derived from a judicial system that is fundamentally inconsistent with the federal judicial system, the state rule may give way to the federal procedural solution; and that Illinois retains separate courts of equity and law, whereas the distinction between law

and equity has been abolished in the federal system. We then said:

> We conclude that the district court correctly decided not to disturb the jury's monetary award, but that the court erred in not considering whether rescission of the contract and return of plaintiff's patent were appropriate.

The general rule as to when an election is necessary is that "'a certain state of facts relied on as the basis of a certain remedy is inconsistent with, and repugnant to, another certain state of facts relied on as the basis of another remedy.'" *Prudential Oil Corp. v. Phillips Petroleum Co.*, 418 F.Supp. 254, 257 (S.D.N.Y.1975). Here, the jury was instructed that plaintiff could receive profits for Counts I and II, fraud and breach of confidential relationship. Apparently dissatisfied with the size of the jury verdict, plaintiff sought in a post-trial motion to have the court reconsider the evidence and award relief based on essentially the same standard the jury used. To have granted plaintiff's request would have been completely unfair to Sears. It might have been better for the court to require the plaintiff to elect his remedy expressly prior to instructing the jury, but plaintiff did not object to the court's procedure, and therefore, must have been satisfied to let the jury determine the appropriate award. Having let the case go to the jury without getting the issue clarified, plaintiff should not be heard to complain about the outcome of that procedure.

With regard to an election between the profits awarded by the jury and return of the patent based on rescission, however, we see no basis for invoking the election of remedies doctrine. Based on the jury

instruction, plaintiff will receive one million dollars as the measure of *past* profits earned by Sears up to the time of trial. That award, however, is not inconsistent with return of the patent so that plaintiff can receive the *future* benefits of the patent that Sears fraudulently acquired. There will be neither a double recovery nor a factual inconsistency between these remedies. *See Prudential Oil Corp., supra* at 257; G. Bogert, The Law of Trusts and Trustees § 946 (2d ed. 1962). Therefore, we conclude that going to the jury under a past profits instruction did not bar plaintiff from seeking rescission and thereby possibly recovering his patent. Whether rescission is appropriate, however, is an issue that should be decided in the first instance by the district court.

573 F.2d at 985–86 (emphasis in original) [footnotes omitted].

A short time after the case was docketed on remand, the defendant offered to make reassignment and delivered proposed drafts of reassignment to the plaintiff. When this offer was rejected, the defendant voluntarily prepared, executed, and tendered to the plaintiff through the district court reassignments of any and all rights in the patents obtained under and pursuant to the June 15, 1965 agreement between the plaintiff and defendant.[1]

Although this was the maximum additional remedy we intended to give the plaintiff, the district court on remand went far beyond that and ordered the entire case reopened for an accounting of all defendant's "unjust enrichment" back to June 15, 1965. *Roberts v. Sears, Roebuck and Co.*, 471 F.Supp. 372, 374 (N.D.Ill.1979). Seizing upon the word "rescission," which we used only in the context of returning the plain-

---

1. The opinion on the first appeal states that the agreement was entered into on July 29, 1965. 573 F.2d at 979. The district court memorandum upon remand states that the plaintiff signed the agreement on June 15, 1965. 471 F.Supp. at 376, 378. The difference in dates is explained by an instruction given to the jury:

> You are instructed that, as a matter of law, the Court has determined that that agreement did not become an agreement between the parties on June 15, 1965, but did become an agreement on July 29, 1965, when, after having been signed by the defendant, it passed from the defendant back through the hands of attorney Fay and into the hands of the plaintiff. Therefore the contract was formed on July 29, 1965, and not on June 15, 1965.

For convenience of reference the agreement will be called the June 15, 1965 agreement.

tiff's patent, the district court, relying upon Illinois law, construed that rescission can only mean void from its inception, which, according to that court, permits the plaintiff to have a second chance to establish past damages or profits, despite the Illinois law as to election of remedies.

## II

■■ In our prior opinion, we repeatedly referred to the "return of plaintiff's patent" and when we used the word "rescission," we used it in the context of returning the plaintiff's patent. We did not say that the plaintiff could under any theory upon remand be entitled to restitution or additional damages or profits. In fact, we expressly said that the plaintiff *did* elect his remedy as to *past* damages or profits up to the time of the jury verdict and that return of his patent might be the most effective way of insuring that the plaintiff receive the *future* benefits of the patent. We remanded the case for the purpose of determining whether as an equitable matter the plaintiff should recover his patent. In retrospect, we would have been better advised to use some other word such as cancellation, termination or forfeiture of the June 15, 1965 agreement, or reconveyance or reassignment of plaintiff's patent,[2] but at the time, "rescission" seemed to be an appropriate word to cover both the process of cancelling the agreement and returning the patent.[3] In any event, we believed that the language of our opinion made it clear that the plaintiff had elected his remedy as to past damages or profits and, because that remedy continued only up to the date of the judgment, it might be equitable to return the patent to the plaintiff as of that same time to insure that he would realize any

future benefits which might accrue through his ownership of the patent as of the time immediately following the entry of the judgment. We did not say nor intend that the June 15, 1965 agreement be subject to being declared void as of any time prior to the date of the entry of the judgment if the district court upon remand found such cancellation to be equitable.

In addition to what we said and intended, the law does not permit the remedy the district court attempted to award upon remand. In the earlier opinion, we accepted Illinois law as to election of remedies for past damages or profits, as had the district court immediately after the jury verdict. We parted with Illinois law only to give the plaintiff an opportunity to protect himself against future damages. The district court would now entirely ignore Illinois law as to election of remedies but would seem to apply the Illinois law of *ab initio* rescission plus complete past restitution.

■ It appears to be clear under general law and under Illinois law as well that a person suing for fraud or misrepresentation may seek damages for the tort of deceit at law or may waive the tort and make an election to seek restitution in quasi contract or equitable restitution. W. Prosser, Handbook of the Law of Torts §§ 94, 105 (4th ed. 1971); E. Thurston, Cases on Restitution 44–109; *Altom v. Hawes*, 63 Ill.App.3d 659, 20 Ill.Dec. 330, 380 N.E.2d 7 (1978).

In *Essington v. Parish*, 164 F.2d 725, 730 (7th Cir. 1947), we noted:

Election of remedies is the act of choosing between different remedies allowed by law on the same state of facts, where the party has but one cause of action, one right infringed, one wrong to be redressed. 28 C.J.S. Election of Remedies

---

2. Actually there are two patents: United States Letter Patent No. 3,208,318 issued to plaintiff on September 28, 1965 and Letters Patent of Canada No. 757,826 issued to him on May 2, 1967.

3. It is true that rescission ordinarily means abrogation from the beginning, but Illinois recognizes the concept of partial rescission, *Keeshin v. Levin*, 31 Ill.App.3d 790, 798, 334 N.E.2d 898, 906 (1975); *Kaplan v. Keith*, 60

Ill.App.3d 804, 808, 18 Ill.Dec. 126, 128, 377 N.E.2d 279, 281 (1978), and rescission is the word often used when a patent or copyright license is terminated after partial collection of royalties. See, generally *Driver-Harris Co. v. Industrial Furnace Corp.*, 12 F.Supp. 918 (W.D. N.Y.1935); *Nolan v. Williamson Music, Inc.*, 300 F.Supp. 1311 (S.D.N.Y.1969).

§ 3. And where a person has two or more remedies for the redress of a wrong or the enforcement of a right and these remedies are based upon inconsistent theories such person is put to an election, and when he has, with full knowledge of the facts, definitely chosen to pursue one remedy he will be bound by his election, *Glezos v. Glezos*, 346 Ill. 96, 99, 178 N.E. 379. If he has voluntarily chosen and carried into effect an appropriate remedy with knowledge of the facts and his rights, he will not, in general, be allowed to resort afterward to an inconsistent remedy, which would involve a contradiction of the grounds upon which he before proceeded. 18 Am.Jur. p. 130.

 The plaintiff prosecuted to judgment his claim for money damages at common law and received one million dollars for defendant's fraud and misrepresentation, representing damages up to the entry of judgment. Prosecution to judgment of one remedy with full knowledge of the facts constitutes an election under Illinois law. *Paoli v. Zipout, Inc.*, 21 Ill.App.2d 53, 57, 157 N.E.2d 79, 83 (1959).

 The plaintiff asked for and insisted upon a jury trial. The district court has now acceded to his demands for further damages covering the same period of time for "disgorgement of defendant's unjust enrichment." Restitution for the disgorgement of unjust enrichment is an equitable remedy with no right to a trial by jury. *S.E.C. v. Commonwealth Chemical Securities, Inc.*, 574 F.2d 90, 94–97 (2d Cir. 1978); *S.E.C. v. Asset Management Corp.*, 456 F.Supp. 998, 999–1000 (S.D.Ind.1978); 5 Moore's Federal Practice, ¶ 38.24[2], at 190.5 (1977). By submitting his damage claim to the jury, the plaintiff elected that remedy.

Illinois law would not only require the preclusion of restitution but would also probably bar the cancellation of the June 15, 1965 agreement and return of the patent as of the date of the entry of the judgment, which are also equitable remedies. However, in our earlier opinion, we provided for this possibility upon remand inasmuch as it does not amount to double compensation for the plaintiff. See *Faber, Coe & Gregg, Inc. v. First National Bank of Chicago*, 107 Ill.App.2d 204, 211, 246 N.E.2d 96, 99–100 (1969); *National Lock Co. v. Hogland*, 101 F.2d 576, 587 (7th Cir. 1938).

### III

Inasmuch as the defendant has voluntarily delivered reassignments of the patent rights as envisioned in our earlier opinion and mandate, the only problem remaining is the effective date of such reassignments. The district court docket indicates that the judgment was entered on January 20, 1977. We therefore vacate the decree or judgment entered on May 31, 1979 and the memorandum of the same date which appears at 471 F.Supp. 372 (N.D.Ill.1979), as being contrary to our earlier opinion and mandate. We remand the case for the purpose of entering a final judgment when the defendant delivers to the court for the plaintiff two assignments properly executed on behalf of the defendant in the form of those appearing in the abstract at pages 716–19, with the following modifications. After the word "assigns" at the end of the second line of the fourth paragraph on page 716, and after the word "assigns" at the beginning of the third line of the fourth paragraph on page 718, add the words "effective as of January 20, 1977."

In order to avoid if possible any future misunderstanding, the effect of these two assignments will be that the defendant owned all of the patent rights from June 15, 1965 to January 20, 1977, and the plaintiff shall be considered the owner from January 20, 1977 on. The plaintiff will not be entitled to sue for any infringement occurring prior to January 20, 1977. As we said before, "[a]t that point in time, the patent's validity can be tested either in an infringement suit or after plaintiff enters into a licensing agreement." 573 F.2d at 982. The defendant was prevented in the first trial from attacking the validity of the patent, but may do so if sued for post-January 20, 1977 infringement by the plaintiff.

The judgment on remand is vacated and the case is remanded for further proceedings consistent with this opinion.

SWYGERT, Circuit Judge, dissenting.

In *Roberts v. Sears, Roebuck & Co.*, 573 F.2d 976, 985 (7th Cir. 1978), this court held that the district court had "correctly decided not to disturb the jury's monetary award." We characterized that award as the "measure of *past* profits earned by Sears up to the time of trial." *Id.* (emphasis in original). That holding is the law of the case.

We also held in our earlier opinion that the jury's award of past profits was "not inconsistent with return of the patent so that plaintiff [could] receive the *future* benefits of the patent that Sears fraudulently acquired." *Id.* (emphasis in original). The combination of a damage remedy for past profits and an equitable remedy as to future benefits was permissible, we reasoned, because there would be neither a double recovery nor a factual inconsistency. Therefore, we remanded the case so that the trial judge could decide "whether rescission is appropriate under the facts of this case." 573 F.2d at 986.

The trial judge took us at our word and proceeded to conduct a trial in equity to determine the question of whether the plaintiff was entitled to the rescission of his contract with Sears. He found that

> Sears committed fraud on Roberts in the way it acquired all of his rights to the quick release device he invented; that Sears breached the confidential relation that existed between Roberts and the company, one that arose out of a pre-existing relationship of employee and employer; and that Sears, in its negotiation for the quick release device committed negligent misrepresentations concerning the company's knowledge of the invention's value, its saleability, and its public acceptance.

*Roberts v. Sears, Roebuck and Co.*, 471 F.Supp. 372, 378 (N.D.Ill.1979). The judge then reviewed the law of Illinois and determined that

> the elements of fraud which would justify rescission of a contract by a suit in equity are the same as those which would sustain an award of damages in an action

at law. . . . [W]here the subject matter of a contract is acquired through fraud, . . . through the breach of a confidential relation, . . . or through misrepresentation, . . . rescission, as a remedy, is available through an action in equity. When this remedy is sought, it is to declare an agreement void from its inception.

*Id.* at 378–79 (citations omitted). Following this recitation of the law of Illinois, the trial judge concluded:

> The mandate of the court of appeals directed this court to consider whether here, on the facts shown in the record, rescission is appropriate. After reviewing the pleadings, the evidence, the prior rulings, and applying the controlling principles of equity, it is this court's judgment that Roberts is entitled to a decree rescinding his June 15, 1965 contract with Sears. Therefore, a decree of rescission will be entered.

*Id.* at 379–80. Finally, the trial judge determined that under Illinois law, "Rescission is the termination of a contract with restitution," and "When it is sought and granted for fraud, an Illinois court of equity usually grants the defrauded party the full remedy to which, under the circumstances, he may be entitled." *Id.* at 380.

Although I agree with the majority that an accounting for the period from the date of the contract to the date of the judgment is prohibited by our earlier decision, I do not agree that the accounting ordered for the period from January 1, 1977 to the date of the accounting was erroneous. In my opinion, Judge Leighton was eminently correct in ordering an accounting for the latter period. Not only was he following the law of the case as pronounced by this court in our first opinion and the mandate that issued, but he came to a result which the facts, the law of Illinois, and the principles of equity required.

We held that the jury award for past profits did not bar an equitable remedy for future benefits. *Roberts v. Sears, Roebuck & Co., supra.* The majority concedes that the damages remedy continued only up to

the date of the judgment, after which time the equitable remedy of rescission attached. By denying the plaintiff an accounting for the period after which his damages were assessed but before he was in a position to benefit from the return of his patents, the majority has, with no justification, left a substantial gap in the plaintiff's rightful recovery.

According to the majority, the contract was rescinded or cancelled as of January 1, 1977. It is not disputed that the remedy of rescission generally carries with it an accounting for profits unjustly earned. Yet, the majority holds that in order for the plaintiff to recover the defendant's profits, he must start a new action at law for patent infringement. Apparently the majority is concerned lest the plaintiff have a second chance to recover in equity what he has already received at law. But the jury award for damages continued only up to the date of the judgment. Here we are concerned exclusively with profits made after that date. Because we have held that the contract was void after January 1, 1977, profits earned by the defendant after that date must be disgorged to prevent unjust enrichment. Because the jury was never asked to award damages for this period, there is no possible double recovery or factual inconsistency in this result. I would give the plaintiff the full equitable relief to which he is entitled upon the finding that rescission is appropriate.

Although we have held that it was permissible for the plaintiff to seek remedies at law for past damages and in equity for future damages, we stated that it was incorrect for the judge to permit past damages to be assessed both at law and in equity for the same time frame. Yet the majority today would require that future benefits be decided partly in equity—the rescission of the contract—and partly at law—a patent infringement action to recover profits. My understanding is that an equitable accounting is designed to prevent this peculiar split of actions while accomplishing the same result.

Finally, I am impelled to record my distress of the majority's assertion that this court did not actually mean "rescission" in its traditional sense when it told the district court to consider whether "rescission is appropriate under the facts of this case." That assertion is unsettling to say the least and unfair to the district judge. But it has greater implications because of the unfairness to the plaintiff.

"Big" business ethics have of late come under heightened scrutiny and criticism. That scrutiny and criticism may appear to be justified if Sears' monumental fraud visited on the plaintiff is any measurement. Evidence before the jury indicated that Sears' incremental profits on the patented wrench had been $44,032,082 from the date it fraudulently acquired the patents up to December 31, 1976. The jury awarded the plaintiff one million dollars damages for that period. Beyond December 31, 1976, according to the directions of the court in the present appeal, the plaintiff will have back his patents with the opportunity to sue Sears for infringement, subject, however, to Sears' defense of invalidity.* For me this result not only condones the proven unethical conduct of Sears but it is manifestly unjust to the plaintiff.

I would reverse in part and affirm in part.