Peter M. ROBERTS, Plaintiff,

v.

SEARS, ROEBUCK AND CO., a corporation, Defendant.

No. 80 C 5986.

United States District Court, N. D. Illinois, E. D.

Feb. 10, 1982.

Louis G. Davidson and John B. Davidson, Louis G. Davidson & Associates, Ltd., Sidney Neuman and George S. Bosy, Neuman, Williams, Anderson & Olson, Chicago, Ill., for plaintiff.

Arnstein, Gluck & Lehr, McDougall, Hersh & Scott, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

BUA, District Judge.

Presently before the court is defendant's motion for summary judgment dismissing Count II of plaintiff's action. An introduction of sorts is necessary before the merits of defendant's motion can be addressed.

This lawsuit represents the most recent stage of a dispute between the named parties that has been in the process of litigation since 1976. Although the cause now before the court is an action separate from the initial lawsuit, the present suit is intimately related to the former, and therefore, the history of the earlier action must be related here. The background of that case, which appeared twice before the district court, and twice before the Seventh Circuit Court of Appeals, is summarized below. Much of the following is borrowed from the appellate court's second decision, *Roberts v. Sears, Roebuck & Co.*, 617 F.2d 460 (7th Cir. 1980) ("*Roberts II*").

The plaintiff inventor sued the defendant retail store chain[1] for breach of confidential relation, fraud, and negligent misrepresentation in the context of an agreement entered into by the parties assigning to the defendant patent rights held by the plaintiff in the plaintiff's invention of a quick release socket wrench. The plaintiff prayed for rescission of the agreement, an injunction against further use by the defendant, imposition of a constructive trust upon the defendant, an equitable accounting by the defendant and "such further equitable relief as may be appropriate."[2] Included among those equitable prayers was a plea "that damages be awarded to plaintiff."

By the time of trial, the issues tried to the jury had been limited to three separate claims: breach of a confidential relation, fraudulent misrepresentations and negligent misrepresentations. The court, in part, instructed the jury as follows in regard to money damages:

> If you find in favor of the plaintiff upon either the first or second claim, then, one

---

1. The plaintiff and defendant in the original action are also the plaintiff and defendant in this action.

2. The complaint originally contained two additional counts involving alleged infringement of the patent by Sears. Those counts, eventually dropped in the first action, are one of the subjects of the present lawsuit. The parties have filed cross motions for summary judgment on the patent infringement issue. Those motions are dealt with in a separate order.

of the elements of the money damages to be considered by you may be the net value to the defendant of the profits and benefits derived from the use of plaintiff's invention. The award of money damages you make may equal the net profits which you find the defendant gained as a result of its merchandising of wrenches incorporating plaintiff's Quick Release invention and idea, minus any expenditures which you find the defendant has proved it incurred which it would not have incurred had it not merchandised such wrenches incorporating plaintiff's Quick Release invention and idea, from the time of the contract in question to the present . . .

The court further instructed the jury that "as a matter of law, any damages you may award under each claim will not be cumulative, and the plaintiff will not be permitted to collect damages under more than one claim." Separate verdict forms were supplied for each of the claims. The jury found for the plaintiff on all three claims and awarded damages of $1,000,000 on each. The total amount of the verdict was represented by that figure. The judgment has been satisfied.

In a post-trial motion, the plaintiff sought equitable rescission and restitution. The district court held that when the plaintiff permitted the case to go to the jury he had elected his legal remedy under Illinois law and could not later also seek equitable relief. Plaintiff appealed, seeking the right to full equitable relief over and beyond the one million dollar legal relief. The defendant cross appealed to set aside the money judgment against it.

In *Roberts v. Sears, Roebuck & Co.*, 573 F.2d 976 (7th Cir. 1978), *cert. denied*, 439 U.S. 860, 99 S.Ct. 179, 58 L.Ed.2d 168 (1978) ("*Roberts I*"), the Seventh Circuit affirmed the district court's judgment against defendant on all three claims in plaintiff's complaint and the court's decision not to alter plaintiff's monetary award, but reversed the court's determination that it lacked the power to award rescission and remanded to the district court for a deter-

mination of whether rescission was appropriate under the facts of the case.

Subsequent to the Seventh Circuit's decision in *Roberts I*, the case went through the trial court and a second round in the Seventh Circuit, ultimately resulting in reassignment of the patent rights to the plaintiff. In order to "avoid if possible any future misunderstanding" the appellate court detailed the implementation of its second order as follows:

[T]he effect of these two assignments will be that defendant owned all of the patent rights from June 15, 1965 to January 20, 1977, and the plaintiff shall be considered the owner from January 20, 1977 on.

617 F.2d at 465.

In its holding in *Roberts II*, the Seventh Circuit also expressed, in strong language, its opinion on the subject of reconsideration on remand (or presumably in an additional lawsuit) of the damage award in the initial trial. The Court stated:

"In our prior opinion, we repeatedly referred to the 'return of plaintiff's patent' and when we used the word rescission, we used it in the context of returning the plaintiff's patent. We did not say that the plaintiff could under any theory upon remand be entitled to restitution or additional damages or profits. In fact we expressly said that the plaintiff *did* elect his remedy as to *past* damages or profits up to the jury verdict and that return of his patent might be the most effective way of insuring that the plaintiff receive the *future* benefits of the patent."

617 F.2d at 464 (emphasis in original).

After the Seventh Circuit's decision in *Roberts II*, plaintiff filed this lawsuit for damages for alleged patent infringement and alleged violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, and Section 7 of the Clayton Act, 15 U.S.C. § 18.

The antitrust count will now be addressed. For the purpose of clarity and because this court believes that the *Roberts II* decision compels it, this court's analysis will be divided into two time periods: 1)

June 15, 1965—January 20, 1977, and 2) January 20, 1977 to present.

### June 15, 1965—January 20, 1977

It is this court's conclusion that plaintiff cannot maintain its antitrust action for Sears' activities during this time period. Roberts has cited no case, nor has the court been able to locate any decision which would support a finding that the antitrust laws have been violated as to the plaintiff.

 Roberts' antitrust allegations relevant to this period are somewhat confused; however, it appears that plaintiff contends that Sears' alleged pattern of activity, including the acquisition of the patent in 1965, enforcement of that patent, the acquisition of a second patent, and "other activities," injured plaintiff and entitled him to seek treble damages under the antitrust laws. Recovery is sought for injury described as follows:

> "[P]laintiff has sustained damage in his business and property, through *inter alia*, the loss of royalty income that plaintiff would have received, but did not receive from others for the licensed manufacture and sale under plaintiff's patents of ratchet wrenches equipped with plaintiff's quick release feature."

*Amended Complaint*, Count II, ¶ 19. The inherent problem in plaintiff's antitrust claim[3] is obvious. None of the matters which Roberts characterizes as antitrust violations can be said to have caused the injury which Roberts has allegedly suffered—his inability to collect royalties from others for licenses under the Roberts patent. Roberts' *assignment to Sears* divested Roberts of all rights to license the patent. Once the assignment occurred, Sears' subsequent activities did not in any way affect those rights. The initial assignment was wrongful and fraudulently induced, but it was *not* an antitrust violation. As the defendant has repeatedly stated,

"conduct not within the scope of the [Sherman] Act is not made into an antitrust violation by accompanying conduct which is reprehensible under some moral or ethical standard or even illegal under some other law."

*Sitkin Smelting and Refining Co. v. FMC Corp.*, 575 F.2d 440, 447 (3d Cir. 1978).

 Apparently acknowledging this dilemma, plaintiff attempts to rely on *Walker Process Equipment, Inc. v. Food Machinery and Chemical Corp.*, 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965) and *Kearney & Trecker Corp. v. Giddings & Lewis, Inc.*, 452 F.2d 579 (7th Cir. 1972). Defendant correctly points out that these cases, which involved fraud upon the patent office, are inapposite. The patent office dispenses monopoly power in the form of patents. Fraud upon the patent office involves deceiving the government into creating such power where it would not otherwise exist. Such activity frustrates the patent office's duty to protect the public interest, a clear purpose behind its creation. *Kearney & Trecker*, 452 F.2d at 590–591.

 Of course, it is true that the antitrust laws are designed to give private parties the right to, at least in part, protect the public interest by bringing treble damage actions. P. Areeda, *Antitrust Analysis*, ¶ 159 (1974). It is a fundamental principle, however, that this potent right must be exercised only by those who can also point to some personal antitrust injury created by the alleged anti-competitive conduct. *Id.* ¶ 160. As has already been stated, however, Roberts cannot make such a showing. *See* p. 6, *supra*. The victims of Sears alleged monopoly, if any exist, are those who allegedly were excluded from competing in the manufacture and sale of quick release wrenches.[4] Roberts is not in this category

---

**3.** As can be readily seen, the complaint's antitrust allegations are somewhat vague, and plaintiff does not attempt to make distinctions among the statutory sections under which liability is asserted. Because the court's treatment of the antitrust count is applicable to both the Sherman Act claims and the Clayton Act claim, it will follow plaintiff's lead and refer to the antitrust claims as a group.

**4.** A showing of such direct antitrust injury must be made even in the context of a case alleging fraud on the patent office. For example, in *Walker Process*, both plaintiff and de-

as he admits that he was never in the wrench business and never attempted to enter it.[5] *See* Deposition of Peter M. Roberts at 91–94. He simply does not have standing to make the charges included in his complaint.

Roberts' next attempt to breathe life into his antitrust claim is his emphasis on a single Seventh Circuit case, which, he alleges, gives him standing to bring his action against Sears. That case is *Moraine Products v. ICI America, Inc.*, 538 F.2d 134 (7th Cir. 1976). Leaving aside defendant's arguments as to the current validity of the *Moraine* holding, it simply cannot be said that it supports Roberts' antitrust claim.

The facts of *Moraine*, in somewhat simplified form, are as follows. Moraine Products, the plaintiff, was an organization founded for the purpose of licensing a patented product. An exclusive license was granted to Atlas, a defendant. Plough, the patentee of a competing product and a process for use of that product also licensed Atlas, and subsequently agreed with Atlas that no further licensing of the Plough patent would occur without the mutual consent of Plough and Atlas. The facts indicated that the Plough and Atlas agreement was effective in excluding a significant number of potential competitors who applied to use the Plough patent. Moraine brought suit. As the Seventh Circuit explained,

"The gravamen of Moraine's complaint of injury is that, because of potential licensees under the [Moraine] patent also required a license under the [Plough] patent in order to practice the [Moraine] invention, the combination unlawfully limiting licenses under the [Plough] patent necessarily limited the number of licenses under the [Moraine] patent and deprived Moraine of royalty income.

538 F.2d 134, 149 (1976).

Atlas argued, in part, that Moraine's claims for loss of royalties were inappropriately brought under the antitrust laws because Moraine lacked standing to sue. The court explained that resolution of the standing issue necessarily depended on determination of whether "the plaintiff ... had a reasonable business expectancy to protect." *Id.* at 150. This determination, the court explained, would depend on analysis of the intent and effect of the original licensing agreement between Moraine and Atlas. Such an expectancy would exist if Moraine's original license agreement with Atlas contemplated additional sublicenses by Atlas from which Moraine might derive royalty income. This issue, the court ordered, was to be the subject of "further factual exploration on remand." *Id.*

fendant were involved in the manufacture of equipment used in sewage treatment systems. In *Kearney & Trecker*, the parties manufactured machine tools. Thus, in both cases, the plaintiff could successfully "allege that the antitrust violation injured a commercial enterprise of the plaintiff in the area of the economy in which the elimination of competition occurred." *In re Multidistrict Vehicle Air Pollution, M.D.L.No.31*, 481 F.2d 122, 128 (9th Cir. 1973).

5. Roberts now attempts, in what can only fairly be construed as a self-serving affidavit, to retract his earlier deposition testimony and speculate that he would have "considered" selling wrenches had he retained the patent instead of assigning it to Sears. Affidavit of Peter M. Roberts at 2. This evidence is clearly inadequate to create an issue of fact which would prevent this court from entering summary judgment in favor of defendant with regard to the time period presently under discussion. F.R.Civ.P. 56(e) restricts affidavits properly considered in summary judgment proceedings to those which contain testimony which would be admissible at trial. Roberts' current conjecture as to what he might have *thought* about doing at an early time is simply too speculative to be characterized as admissible. *Elyria-Lorain Broadcasting Co. v. Lorain Journal Co.*, 298 F.2d 356, 360 (6th Cir. 1961); *Bridgen v. Scott*, 456 F.Supp. 1048, 1064 (S.D.Tex.1978).

It is interesting to note that Roberts' unsuccessful attempt to now assert that he was a potential competitor in the marketing and selling of quick release wrenches actually points out the error of another of his arguments, namely that if he is not allowed to sue, no other possible plaintiff will exist to challenge Sears' alleged monopoly. Plaintiff's Brief at 20. Certainly, if in fact Sears did violate the antitrust laws, there are individuals capable of making a more legitimate showing that they had both the economic capability and actual intent to enter the relevant market. *Cf.* III Areeda and Turner, *Antitrust Law* ¶ 701c, *see also* P. Areeda, *Antitrust Analysis*, ¶ 160(c) and cases cited therein (1974).

Far from being "on all fours" with plaintiff's case, as Roberts claims, *Moraine* is in fact wholly inapposite with regard to the period presently under discussion. As the Seventh Circuit's holding in *Roberts II* emphasizes, Roberts had *no rights* in the patent between 1965 and 1977. The patent had been assigned. Sears was its owner. Roberts, therefore, as a matter of law, could have no business expectancy which now requires vindication by the antitrust laws. No evidentiary inquiry on the part of this court could dispel this fact.

As defendant correctly notes, Roberts' misreading of *Moraine* is highlighted by the baffling footnote at page 12 of his Memorandum to the effect that there is "obviously" no difference between an assignment of a patent, e.g. the Roberts-Sears agreement and an exclusive license agreement like that present in *Moraine.* Defendant is absolutely correct in stating that "the *precise point* made by the Seventh Circuit in *Moraine* with respect to the standing issue was that the license agreement, *unlike a complete assignment,* could have contemplated sublicenses from which Moraine could have expected financial benefit." Defendant's Reply Brief at 13.[6]

Even if it were possible that some theory exists upon which the plaintiff could base his theory of antitrust recovery, this court would nevertheless feel compelled to reconsider its order of June 8, 1981, and find Count II barred under the doctrine of *res judicata.* The court is persuaded by defendant's analysis of *Harper Plastics, Inc. v. Amoco Chemicals Corporation,* 657 F.2d 939 (7th Cir. 1981). In this court's earlier opinion, it was stated that *res judicata* did not bar plaintiff's antitrust claims "because Roberts' Count II claim involves a substantive right, i.e. the right to be free of antitrust injury, significantly different from that asserted in his prior action." *Roberts*

*v. Sears, Roebuck & Co.,* No. 80 C 5986, Order of June 8, 1981 at 3. After further reflection, this court now believes that this distinction was erroneous. Roberts' earlier action was brought for profits lost as a result of plaintiff's assignment of his patent to Sears. The present action claims an alleged loss of royalty income. It must be noted, however, that when the holder of a patent sets a royalty figure, his calculations are based primarily on his assessment of the amount of profit he would obtain if he were to market the invention himself. P. Areeda, *Antitrust Analysis* ¶¶ 409, 410 (1974). Therefore, rather than attempting to vindicate a separate substantive right in his present action, Roberts is in fact suing for damages which relate to a right substantially identical to that for which damages were recovered in the earlier suit—lost profits. Such a double recovery cannot be allowed. Plaintiff cannot avoid the effects of *res judicata* merely by asserting his claim under the label of a different theory. *Harper Plastics,* 657 F.2d at 944. It is appropriate here to reiterate the words of the Seventh Circuit's opinion in *Roberts II* which were cited earlier. *See* p. 786, *supra.* The court stated,

> "We did not say [in our earlier opinion] that plaintiff could *under any theory* (emphasis added) upon remand be entitled to restitution or additional damages or profits. In fact, we expressly said that the plaintiff *did* elect his remedy as to *past* damages or profits up to the jury verdict. . . ."

617 F.2d at 464 (emphasis in original except as noted.) It is the court's belief that these words are binding on both the district court in the first lawsuit *and* upon this court.

For the above reasons, it must be concluded that plaintiff could have and should have properly brought his antitrust claim in the earlier lawsuit, and that, as a

---

6. It is undoubtedly plaintiff's reliance on *Moraine* which has given rise to his most puzzling argument—namely that if he were the holder of the patent, he would have freely licensed any interested party who wished to enter into a licensing agreement. Plaintiff's affidavit at 2–3. Because of 1) the speculative nature of these statements, *see* fn. 5, p. 788, *supra,* and 2) their irrelevance given the fact that plaintiff was *not* the owner of the patent during this time period, *see Roberts II,* 617 F.2d at 465, this court declines to analyze further plaintiff's conjecture as to his benevolence.

result, his attempt to invoke this theory of recovery at this late date must be barred.

### January 20, 1977—Present

■ As was stated earlier, this second time period is treated separately because it is this court's belief that both the case law relied upon by plaintiff and the Seventh Circuit's decision in *Roberts II* compel such treatment. The preceding analysis indicates that the defendant is entitled to summary judgment as to the 1965–1977 time period because both the facts and the law of standing prohibit plaintiff's attempt to recover treble damages. The time period presently under discussion is different, however. Although there exists a legal theory upon which plaintiff could conceivably base his claim for damages, *see generally Moraine Products v. ICI America, Inc.*, 538 F.2d 134 (7th Cir. 1976), plaintiff has not demonstrated the sort of conduct, i.e. a conspiracy to restrict royalties, which was found worthy of further factual exploration in *Moraine*, nor has plaintiff presented the court with any indication that he was possessed of the sort of "business expectancy" which was found controlling on the issue of standing in that case. Not only has plaintiff failed to bring to the court's attention the details of any licensing agreement which exists between Sears and Roberts, he has, in fact, failed even to mention the existence or non-existence of such an agreement.

In light of the complete absence of any facts which would bring plaintiff's claim within the ambit of *Moraine*, this court sees no basis for proceeding to trial on the antitrust issue for the above time period.

### CONCLUSION

In sum, for the period covering June 15, 1965—January 20, 1977, defendant is granted summary judgment on Count II of plaintiff's claim both because plaintiff lacks standing to bring his action for that time period, and because of this court's belief that even if a theory of standing could be identified, plaintiff's claim is barred by the doctrine of *res judicata*. For the period covering January 20, 1977 to the present, summary judgment for the defendant will also be granted because of the absence of any fact on which recovery could be based.

IT IS SO ORDERED.